**In re Maudie Elma Griggs DeMOSS, Debtor.**

**Bankruptcy No. 582–01151–M13.**

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

March 13, 1986.

---

John T. Scott, McLeod, Swearingen, Verlander & Dollar, Monroe, La., for debtor-movant.

R. Douglas Wood, Jr., Brown & Amman, Monroe, La., for opponent—Louisiana Bank of Ouachita Parish.

## MEMORANDUM AND ORDER

LeROY SMALLENBERGER, Bankruptcy Judge.

The debtor, Maudie Elma Griggs De-Moss, filed this Chapter 13 case on September 7, 1982. The Chapter 13 Plan provided:

### CHAPTER 13 PLAN

The debts of the Debtor, duly filed and approved by the Court, shall be paid to the holder thereof in full accordance with provisions of the Bankruptcy Code and this plan;

The Debtor shall pay to the Trustee out of her future earnings, in the sum of $258.95 per month for ten (10) months and then $210.55 for the remaining twenty-six (26) months. The trustee shall make distribution of the funds so received by paying:

    I.  (1) Trustee's expense
        (2) Trustee's fee
        (3) Attorney for Debtor

    II.  Amount per month to priority creditors for administrative costs as follows:

| PRIORITY CLAIMS | TOTAL AMOUNT DUE CREDITOR AS STATED BY DEBTOR | PAYMENT PER MONTH UNDER PLAN |
|---|---|---|
| JOHNNY E. DOLLAR<br>McLeod, Swearingen,<br>Verlander & Dollar<br>P.O. Box 1552<br>Monroe, LA 71220 | $440.00 | $44.00 |

(NOTE: This creditor's claim represents attorney's fees for filing these Chapter 13 proceedings. This claim shall be paid in ten (10) equal monthly installments of $44.00 each.)

| SUBTOTAL | $440.00 | $44.00 |
|---|---|---|

III. Amount per month to secured creditors as follows:

| SECURED CLAIMS | TOTAL AMOUNT DUE CREDITOR AS STATED BY DEBTOR | TOTAL SECURED AMOUNT DUE ON DEBT | PAYMENT PER MONTH UNDER PLAN |
|---|---|---|---|
| Louisiana Bank<br>P.O. Box 2256<br>West Monroe, LA 71291 | $25,000.00 | $20,000.00 | $191.41 |

(NOTE: The value of the collateral securing this claim is $20,000.00. This creditor will be paid $20,000.00 plus ten percent (10%) interest, based upon a twenty (20) year amortization, with monthly reductions, payable in thirty-six (36) monthly payments, with the unpaid balance at the end of said time period to be due in one balloon note approximately $19,017.95).

Louisiana Bank filed an objection to this Plan which was overruled by this Court on November 24, 1982. Payments under the Plan commenced on October 20, 1982. The issue before the Court now concerns the debtor's Motion to Extend Chapter 13 Plan filed on November 4, 1985. The debtor has made all monthly payments under the Plan, but could not secure financing to pay the balloon note, which was due in October of 1985.

Louisiana Bank has objected to the Motion to Extend on two grounds: 1) that the modification attempts to modify the rights of the bank's claim, which is secured by a mortgage on the debtor's principal residence in contravention to section 1322(b)(2) of the Bankruptcy Code and 2) the deterioration of the property has actually undermined Louisiana Bank's status as a secured creditor.

The applicable codal provision is 11 U.S.C. 1329, which provides:

**§ 1329 Modification of plan after confirmation.**

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments or;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) the plan as modified becomes the plan unless after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

As dictated by section 1329, we must also examine the modification as if filed ab initio under section 1322, which states:

§ 1322.  **Contents of plan.**

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;  and

(3) if the plan classifies claims, provide the same treatment of each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 122 of this title, but not discriminate unfairly against any class so designated, however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default with a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity;  and

(10) include any other appropriate provision not inconsistent with this title.

(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

The debtor, who clearly bears the burden of showing compliance with section 1329 and 1322 argues that the Motion to Extend should be granted.

█ The Court disagrees.  Our decision, however, is based upon a different rationale than the one proposed by Louisiana Bank.  The debtor first maintains that the legal principle of res judicata precludes the

bank's objection. This argument the Court finds frivolous and without merit. Clearly, under 1329 the bank has the right to object independent of the issues that arose at the original confirmation. The debtor's motion raises issues concerning whether or not a substantial change in the debtor's income or expenses has in fact occurred since the original confirmation such that this Court should allow the Plan to be modified.[1] Thus, new justiciable issues are raised with the Motion and the bank's objection.

■ Next, we reject the bank's first argument against the Motion to Extend because, as dictated by 1322(b)(2), the exception to modification applies *only* if the claim is only secured by a security interest in real property that is the debtor's principal residence. The purpose of this rule as indicated by Judge Tate in *Grubbs v. Houston First American Savings Assoc.*, 730 F.2d 236 (5th Cir.1984) was:

> accomplished by a series of agreed-upon floor amendments in both houses, by which differences between the two versions were reconciled and compromised. With regard to § 1322(b)(2), the Senate receded from its position that no "modification" was to be permitted of **any** mortgage secured by real estate; it instead agreed to a provision that modification was to be barred only as to a claim "secured only by a security interest in real property **that is the debtor's principal residence."** This limited bar was apparently in response to perceptions, or to suggestions advanced in the legislative hearings, **see** note 13 **supra,** that, home-mortgagor lenders, performing a valuable social service through their loans, needed special protection against modification thereof (i.e., reducing installment payments, secured valuations, etc.). 730 F.2d at 246.

The bank is clearly not only secured by the debtors principal residence. The original indebtedness is a promissory note signed by William G. DeMoss and his wife, Bobbie Faye DeMoss, who are the son and daughter-in-law of the debtor herein, Maudie Elma DeMoss. These documents have been filed with the Court as Exhibits to Louisiana Bank's Petition for Executory Process that was filed in State Court, on July 20, 1982. Also in the exhibits is evidence that this promissory note was secured by three (3) different collateral pledge agreements. One of these pledge agreements is a note and mortgage signed by the debtor covering the debtor's interest in the property at issue. Thus, the bank's claim is not protected by the dictates of 1322(b)(2) and can be modified as provided in section 1329.

In *Grubbs,* the Fifth Circuit, en banc, held that the curing of a default-acceleration was not a modification prohibited by 1322(b)(2). In that case, the Court was analyzing the word modify as used in section 1322. This Court does not believe that the *Grubbs* analysis of modify in section 1322 should be applied to section 1329. Rather, the Court believes that modify in section 1329 means to change the duration or the amount of the payment under the Chapter 13 Plan. The legislative history provides:

> After confirmation, but before the completion of payments, the debtor may request a modification of the plan to increase or reduce *payments* under the plan to a particular class, to extend or reduce the time for payments or to alter the amount of distribution to a creditor whose claim is provided for under the plan.

Initially, we note that section 1329(c) makes it unmistakably clear that no plan modified after confirmation may extend beyond the maximum period permitted under section 1322(c). Thus, the extension must pay off the balloon note balance by October, 1987. The current mechanics of the plan does not meet this requirement. The

---

1. Arguably the debtor has the alternative of not completing this Chapter 13 Plan, and filing a second, successive, Chapter 13 case. *In re Johnson,* 8 C.B.C.2d 756, 708 F.2d 865 (2nd Cir.1983).

total repayment period may not exceed five years.

Second, this Court may only grant an extension for "cause". The definition of "cause" is left to judicial discretion, to be decided on a case by case basis. The legislative history indicates to his Court that if the sole reason presented for the extension is to give the debtor a better chance of rehabilitation then this Court must deny the extension. There must be some special supporting reason. *In re Hendricks* 20 B.R. 255 (Bkrtcy.W.D.Kentucky 1981). Congress envisioned that under some special circumstances, such as illness or an unforeseen financial change, a chapter 13 plan could be modified to change the monthly amount or term of the plan. In the case at bar, however, there is no change in the debtor's circumstances. Rather, the debtor is faced with the inability to secure financing or otherwise meet her balloon note obligation. The debtor is apparently over 80 years old living on social security retirement and some money from her son. In June 1980, the debtor helped her son obtain a loan of some $46,-000 by using her home as part of the collateral for the loan. In 1982, the son defaulted on the loan and then filed a Chapter 11 Bankruptcy with this Court. Thereafter, the case was converted to a Chapter 7 liquidation. The Bank then proceeded against Mrs. DeMoss's property and she filed this Chapter 13 proceeding. Mrs. DeMoss's circumstances have not changed. True, she has been unable to obtain financing for the balloon note. Additionally, the counsel for the debtor puts forward some emotional, but inappropriate, arguments concerning kicking his client out of her home like a mere pauper. Clearly, this is a case where hard facts could make bad law. We do not believe, however, that "cause", as dictated by the Bankruptcy Code and its legislative history exist, so as to make the bank responsible for the original mistake in having Mrs. DeMoss use her homestead as collateral.