**In re Walter GRAHAM, Debtor.**

**Bankruptcy No. 90–30046–SW–13.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 7, 1990.

Thomas L. Williams, Joplin, Mo., for debtor.

ORDER DENYING CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN

ARTHUR B. FEDERMAN, Bankruptcy Judge.

In this Chapter 13 case the debtor proposes to satisfy his ex-wife's claim by transferring to her a portion, but not all, of the property upon which she claims a security interest. Since I find that such treatment violates Section 1325(a)(5) of the Bankruptcy Code, confirmation of the debtor's Second Amended Chapter 13 Plan is denied.[1]

The debtor and Melba Graham were divorced in Ottawa County, Oklahoma on October 4, 1989. Prior to their divorce, they owned 50% of the stock of two closely-held corporations, RGS Engineering, Inc. and RGS Industries, Inc. In its divorce decree,

1. It should be noted that the Trustee has filed separate objections to the proposed plan, based upon his contention that payments to be made to unsecured creditors will not amortize such debts within the 60–month maximum period of Chapter 13 plans (11 U.S.C. Section 1322(c)). Debtor has indicated that once the appropriate treatment for his ex-wife is determined he intends to propose a Third Amended Plan in response to the Trustee's objections.

the Oklahoma Court found that Ms. Graham was entitled to 40% of the value of such stock, that the stock had a total value of $778,955.00, and that she was therefore entitled to be paid $311,582.00. However, the Court did not require that the stock be immediately liquidated to pay her that sum; instead it allowed the debtor to make payments of $3000 per month for one year, after which the remaining balance is to be due and payable, or earlier in the event either company was sold prior to that time. As security for the obligation, the Oklahoma Court ordered that Ms. Graham be given a lien on all the stock until the obligation was paid. The Court said:

> "That until such time as the payment of the total amount of $311,582.00 is paid by the Plaintiff to the Defendant, the Defendant shall have a possessory lien on all corporate stock of RGS Engineering and RGS Industries which is in the name of the parties to this action."

Debtor made no payments on this obligation. The record does not indicate that he either appealed the Oklahoma order, or asked that it be modified. Instead, on February 20, 1990 he filed this Chapter 13 case. At that time, Ms. Graham was owed a total of $334,916.37, including attorneys fees and interest on defaulted payments. The stock itself has never been delivered to Ms. Graham, but is instead in the possession of debtor's bankruptcy counsel. For purposes of this proceeding, the ex-spouses have agreed among themselves that Ms. Graham's claim is secured.[2]

The issue is whether the proposed plan complies with Section 1325(a)(5) of the Code. That Section provides that the Court shall confirm a plan if one of three requirements is met as to each secured creditor. These are:

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; ...

■ Debtor's plan provides that the class of creditors represented by Melba Graham "shall retain its lien until paid in full by release to it of $334,776.09 worth of stock in RGS Engineering, Inc. and RGS Industries, Inc." As interpreted by debtor's counsel, the plan provides that Ms. Graham will be given some portion of the stock upon which she claims a lien, such transfer of property to be in full satisfaction of her claim. The issue of whether the debtor can transfer a portion of the creditor's collateral to the creditor, in full satisfaction of the creditor's claim, has been submitted without an evidentiary hearing. Neither party, therefore, offered any evidence as to precisely how much stock is to be transferred, or the value of such stock. In her Proof of Claim Ms. Graham contends that her collateral, consisting of the 50% interest in the two companies, has a value of $778,955.00. The debtor argues that if 50% of the stock is worth $778,955.00, then, therefore, a pro rata percentage of such stock must be worth the same percentage of the total value. He therefore proposes to give her approximately 23% of the company's stock in satisfaction of her claim of $334,776.09. Debtor's argument assumes that if 50% of a closely-held company is worth X, then 25% must be worth ½ of X. Therefore, he argues, his ex-spouse should be required to accept a portion of her collateral in full satisfaction of her debt, regardless of whether such minority interest in the businesses could be sold for enough to pay off her claim. Of course, in the real world, a minority interest in a closely-held corporation may have no value, since the holder of such minority

---

2. The parties apparently take the position that the Oklahoma order creates a judicial lien even in the absence of the delivery of the stock. It should be noted that in the event Ms. Graham does not have a valid security interest or judicial lien on such stock, her claim would be an unsecured one. As a result, the debtor would be ineligible for Chapter 13, as his unsecured claims would be in excess of the limitation set out in 11 U.S.C. Section 109(e).

interest may or may not have any right of control over the business operations.

Section 1325(a)(5) is based on the assumption that a Chapter 13 debtor cannot deny a secured creditor the benefit of the lien for which it has bargained with the debtor. Absent bankruptcy, a secured creditor retains its lien on collateral until the debt secured by such lien is paid in full. If a default occurs, a creditor with a lien on stock would be able to sell such stock in a commercially reasonable fashion, under Section 9–504 of the Uniform Commercial Code as enacted in the appropriate state, here Oklahoma (12A Oklahoma Statutes, 1981 § 9–504). In the event the collateral sells for more than the debt due, the excess would be remitted to the debtor; if less, the creditor would have a claim against the debtor for the deficiency.

Section 1325 recognizes and preserves the rights of secured creditors. In the absence of consent, a debtor has two choices. One, he can simply surrender "the property securing such claim to such holder ..." or two, the debtor can pay the creditor the value of such collateral over time with interest at a market rate, thus giving the creditor the same value it would receive if it sold the collateral outside of bankruptcy. However, if the debtor chooses to pay the debt over time, the creditor must be allowed to retain its lien until paid in full, so that if the debtor defaults in its payments under the plan the creditor can still take possession of and sell its collateral.

The debtor's plan does not propose to surrender to Ms. Graham "the property" securing her claim. Instead, it proposes to surrender only a portion of such property. Therefore, it does not comply with Section 1325(a)(5)(C).

■ Debtor argues that his plan complies instead with Section 1325(a)(5)(B). As indicated, the plan states that Ms. Graham will retain her lien until she is paid in full, but provides that she will be paid in full by release to her of $334,776.09 worth of stock. Thus, the plan contemplates that after confirmation Ms. Graham will be given a pro rata share of her collateral and will immediately release her lien, whether or not the collateral she is given can in fact be sold for enough money to satisfy her claim. Debtor's plan ignores the practical difficulties associated with marketing a minority interest in a closely-held business. Under this proposal, even if Ms. Graham marketed the stock in a commercially reasonable manner and sold it for less than the amount owed her, she would have no further claim against the debtor, and would have released her lien against the remaining stock held by him.

In the case of *In re Hanna,* 912 F.2d 945 (8th Cir.1990), the Eighth Circuit considered confirmation of a debtor's Chapter 12 Plan under § 1225(a)(5)(B), which is identical to § 1325(a)(5)(B). In *Hanna,* a bank held an oversecured claim, with collateral valued at 120% of the amount due it. Included in its collateral was the debtors' livestock herd, and any additions thereto, as well as proceeds from the sale of such livestock. The Plan proposed to take a portion of the livestock herd, sell it, and use the proceeds to pay creditors other than the bank. In order to restore the bank's collateral position, the Plan proposed to give the bank a new second mortgage on certain real estate. As a result, debtors argued, the bank would under its Plan have collateral with a value of 165% of its claim, and should therefore have nothing to complain about. The Court acknowledged that in a livestock operation cattle would be bought and sold, and so the composition of the creditor's collateral would change somewhat over time. That was part of the original bargain between the parties. However, debtors would not be permitted to void the lien on a portion of the herd and replace it with one on real estate. The Court said:

Rather than providing that the bank retain a lien on the herd sufficient to adequately protect its secured claim, the plan replaces the bank's entire equity cushion in the herd with a second mortgage on agricultural land encumbered by a first mortgage in excess of $400,000. Such provision does not satisfy § 1225(a)(5)(B)(i). The mortgage granted

the bank is much less liquid and carries with it different risks than a lien on cattle, for which the bank had bargained. The debtors' plan denies the bank too much of the benefit of that bargain. We recognize that an interpretation of § 1225(a)(5)(B)(i) which permits the debtor to replace a creditor's lien on livestock with a lien on any type of collateral, no matter how liquid or encumbered, would give livestock operations an even greater chance of obtaining confirmation of a Chapter 12 plan. But in our view that does not justify the complete disregard of the express language of § 1225(a)(5)(B)(i) which such an interpretation entails. In sum, the debtors' plan calls for a construction of that section which renders Congress' use of the words "the lien" all but meaningless, and thereby impermissibly alters the balance struck between the rights of debtors and creditors. (footnotes omitted) 912 F.2d at 951–2.

Other cases have similarly denied confirmation of Chapter 13 plans which take from a secured creditor all or a portion of its collateral. *In re Hink*, 81 B.R. 489 (Bkrtcy. W.D.Ark.1987); *In re Litton*, 36 B.R. 660 (Bkrtcy.M.D.Tenn.1984).

Here, the debtor proposes to void his ex-wife's lien without even providing her with any substitute collateral at all. As justification, debtor contends that he is distributing to her property of a present value equal to the allowed amount of her secured claim, and that such secured claim should be deemed satisfied. Of course, there is no evidence that the interest sought to be transferred has a present value equal to her claim. Even if this Court were bound by the State Court valuation of the property, which it is not, *In re Erwin*, 25 B.R. 363 (Bkrtcy.Minn.1982), the State Court did not value the property sought to be transferred here. The State Court valued a 50% interest in the company, not a 23% interest. The best proof of value is in the market place. If the stock sought to be transferred really and truly has the value contended by debtor, he should sell that portion of his holdings and pay the proceeds to his ex-wife. Or, if he would rather, he could pay her the value of such stock over the course of this Chapter 13 Plan, but allow her to retain her lien until paid in full. Or, he could surrender to her all the collateral securing her debt, thereby allowing her to sell it and either pay to him the excess or make a claim against him for the deficiency. Or finally, he could exercise any rights available to him in Oklahoma to seek to have the state court judgment modified or set aside.

Confirmation of the Debtor's Second Amended Plan is DENIED.