In re Carl Andrew NICEWONGER,
Patricia Ann Nicewonger,
Debtors.

**Bankruptcy No. 95–51246.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 28, 1996.

Robert Whittington, Jr., Akron, OH, for Debtors.

Michael Tucker, Weltman, Weinberg & Reis Co., LPA, Cleveland, OH, for Creditor.

**ORDER OVERRULING CREDITOR'S OBJECTION TO PARAGRAPH 9 OF DEBTORS' PLAN OF REORGANIZATION**

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter is before the Court on National City Bank's ("NCB") objection and supplemental objection to the confirmation of Debtors' chapter 13 plan. A hearing on the confirmation of the Debtors' plan was held on September 14, 1995. Prior to that hearing, the parties' counsel entered into a stipulated Order which permitted Debtors' plan to be confirmed over NCB's objection with the understanding that the disputed legal issue would be decided thereafter and, if necessary, the confirmed plan would be amended in accordance with the Court's determination. As a result of that hearing, the parties agreed upon a briefing schedule with respect to the disputed issue.

Based upon a review of the record, the September 14 hearing, and the parties' briefs, the Court makes the following findings of fact and conclusions of law.

**I. FINDINGS OF FACT**

The following facts are undisputed:

1. Debtors filed for relief under chapter 13 of the Bankruptcy Code on July 21, 1995.

2. NCB holds a perfected security interest in Debtors' 1989 Challenger 24′ travel trailer.

3. The value of the travel trailer is $5,900.00.

4. NCB holds an allowed, secured claim in the amount of $5,900.00 plus interest at a rate of 10.2% per annum from July 21, 1995.

5. NCB holds an allowed, unsecured claim in the amount of $2,892.87.

6. Paragraph 6 of Debtors' chapter 13 plan provides that holders of unsecured claims shall be paid 28% of the amount owing on such allowed, unsecured claims.

7. Paragraph 9(b) of Debtors' chapter 13 plan provides that upon receipt of full payment of its allowed, secured claim, NCB shall release its lien on the travel trailer and shall return all title documents to the Debtors with cancellation of its lien noted thereon.

8. On September 6, 1995, NCB objected to the confirmation of Debtors' chapter 13 plan based upon its contention that it could not be compelled to release its lien on the travel trailer until Debtors had fully completed all payments under their chapter 13 plan and received a discharge.

## II.  ISSUE

The issue before the Court is whether a chapter 13 plan that requires an undersecured creditor to release its lien on Debtors' property after full payment of such creditor's allowed, secured claim but before full payment of its allowed, unsecured claim may be confirmed over the objection of that creditor.[1]

## III.  CONCLUSIONS OF LAW

■ Various sections of the Bankruptcy Code and of chapter 13 specifically address the rights of holders of secured claims and the possible modification of such rights under a chapter 13 plan. *See e.g.,* 11 U.S.C. §§ 506(a), 1322(b)(2), and 1325(a)(5)(B). The issue at bar concerns the permissible extent of such modifications.

NCB, through its objection to confirmation, argues that an undersecured creditor can only be required to release its lien on Debtors' personal property after Debtors have completed all payments under their chapter 13 plan and received a discharge. NCB relies on § 349 of the Bankruptcy Code which provides generally that upon dismissal of a bankruptcy case, the parties' rights are re-established to those that existed prior to the bankruptcy filing. *See* 11 U.S.C. § 349. NCB asserts that the only way to give effect to § 349 and to continually guarantee that an undersecured creditor can be reinstated to its pre-petition status, should a debtor dismiss the case, is to postpone the avoidance of the lien until completion of the plan.

Debtors argue that by operation of 11 U.S.C. §§ 506(a), 1322(b)(2), and 1325(a)(5)(B), their plan can require an undersecured creditor to release its lien once the secured portion of that creditor's claim is fully paid but prior to the completion of all payments to that creditor on account of the unsecured portion of its claim under their plan. Debtors contend that, if an undersecured creditor is not required to cancel its lien until after there has been a discharge, then the cited code provisions would be rendered without meaning in their case.

NCB would like to characterize itself as the holder of a single, undersecured claim. However, 11 U.S.C. § 506(a) provides, in relevant part that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and *in conjunction with any hearing* on such disposition or use or *on a plan affecting such creditor's interest.*

(Emphasis added). Thus, on the stipulated facts, NCB is the holder of both a secured claim in the amount of $5,900.00 and of an unsecured claim in the amount of $2,892.87.

Section 1325 of the Bankruptcy Code addresses the confirmation of a chapter 13 plan and provides that the Court shall confirm a chapter 13 plan over the objection of a holder of a secured claim if:

> (i) the plan provides that the holder of such claim retain the lien securing such claim; and

> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B)(i) and (ii). Although that provision specifically provides that a secured creditor must retain its lien, it does not directly address whether the creditor must be accorded its lien rights only until the secured portion of its claim has been paid or until all payments to that creditor under the plan are complete.

Courts that have decided on this particular issue have come to differing conclusions. *See e.g., In re Lee,* 156 B.R. 628 (Bankr.D.Minn. 1993); *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992) (holding that debtor can require a undersecured creditor to release its lien while chapter 13 still pending)

---

1. This decision does not address the other statutory prerequisites to confirmation of a debtor's chapter 13 plan as NCB's only challenge is as to the operation of 11 U.S.C. § 1325(a)(5)(B).

and *In re Scheierl,* 176 B.R. 498 (Bankr. D.Minn.1995); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993) (holding that a debtor cannot require an undersecured creditor to release its lien until debtors have made all payments under the chapter 13 plan). Because of the bifurcation of a secured claim in bankruptcy mandated by 11 U.S.C. § 506(a), this Court agrees with the cases that hold that the holder of a secured claim can be required to release its lien upon receiving payment through the chapter 13 plan of the value of its interest in estate property that is not surrendered. That conclusion is consistent with the language and intent of the Bankruptcy Code, particularly as evinced in the 1994 amendment of 11 U.S.C. § 348(f)(1)(B).[2] *See also* 11 U.S.C. § 506(d) which provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

■ The Court recognizes that, in the absence of a bankruptcy filing and assuming a stream of loan payments that reduce the principal amount owing without a commensurate depreciation in the value of its collateral, NCB might over time convert its position from an undersecured creditor to that of a fully secured creditor. The Court further recognizes that as a practical matter many items that serve as collateral for consumer loans depreciate in value at a rate equal to or greater than the pay down rate of the loan principal. In the context of a chapter 13 plan, however, the endless variations in loan to collateral ratios that could occur can be set aside for the purpose of determining an undersecured creditor's rights. As the italicized language in 11 U.S.C. § 506(a), *supra,* makes clear, the value of the collateral claimed by the holder of a secured claim may be determined on the occasion of consideration of a plan that will affect such holder's rights.

■ Section 1322(b)(2) of the Bankruptcy Code clearly states that a chapter 13 plan may "modify the rights of holders of secured claims." *See* 11 U.S.C. § 1322(b)(2).

Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor. Section 1322 emphasizes that purpose by fixing a minimum of mandatory plan provisions.

Revision Notes and Legislative Reports to 1978 Act, Senate Report No. 95–989, *reprinted in* 11 U.S.C.A. § 1322. This provision, coupled with 11 U.S.C. § 506(a) bifurcation of an undersecured creditor's claim into secured and unsecured portions, demonstrates that the holder of an undersecured claim has been accorded due process upon the receipt of the present value of its collateral through plan payments and can be required to release its lien prior to the payment of any dividend provided by the chapter 13 plan on the unsecured portion of the amount owing to it. *See also* 11 U.S.C. § 1325(a)(5)(B).[3] Once such

---

**2.** In 1994 Congress amended 11 U.S.C. § 342(f)(1)(B) so that it would provide that upon conversion of a case from one under chapter 13 to one under chapter 7, "valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan."

**3.** The legislative history of 11 U.S.C. § 1325 points out that once the present value of a creditor's allowed, secured claim is paid in full in a chapter 13 case, the lien will have been satisfied.

To this extent, a secured creditor in a case under chapter 13 is treated identically with a recourse creditor under section 1111(b)(1) of the House amendment except that the secured creditor in a case under chapter 13 may receive any property of a value as of the effective date of the plan equal to the allowed amount of

the creditor's secured claim rather than being restricted to receiving deferred cash payments. Of course, the secured creditors' [sic] lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim. To the extent the deferred payments exceed the value of the allowed amount of the secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payments.
124 Cong.Rec. H11, 107 (daily ed. Sept 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6481–82; 124 Cong.Rec. S17, 423 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6550–51.

due process has been accorded, § 1322 allows the debtor to modify a creditor's claim.

■ In the case at bar, modification of NCB's rights took the form of a 28% payout on the unsecured portion of NCB's claim and a requirement that it release its lien. Because the plan provides for protection of the secured portion of NCB's claim by lien retention until payment in full is made on the secured claim, the Debtors have modified NCB's rights within the permissible parameters of the Bankruptcy Code.

In its objection to confirmation, NCB also relies upon the case of *In re Burba,* 42 F.3d 1388 (6th Cir.1994) (withdrawn for publication, 1994 WL 620949 (6th Cir.1994)), which addressed whether a chapter 13 debtor who paid the secured portion of an undersecured creditor's claim and then converted to a chapter 7 could redeem the collateral and avoid the creditor's lien by paying the amount owed on the unsecured portion of the claim. *Burba* simply is not determinative in this case; it dealt with the issue of how to value collateral in a converted case prior to the 1994 amendment of 11 U.S.C. § 348(f)(1)(B). *See supra,* note 2.

■ Indeed the 1994 amendment of § 348(f)(1)(B) can be read as an explicit recognition by Congress that, at least in a consumer case, even partial payment of the secured portion of an undersecured claim operates as an immediate, partial satisfaction of the secured portion of the claim. Thus, on the conversion of a chapter 13 case to a chapter 7 case prior to the full payment of the secured portion of an undersecured claim, and absent unusual circumstances, the holder of a secured claim is entitled to receive only one full payment of the value of its collateral pertaining to that claim through the pendency of the debtor's entire case. The clarification of the relative rights of holders of undersecured claims and other parties in interest, i.e., both holders of wholly unsecured claims and the debtor, embodied in that 1994 amendment of § 348(f)(1)(B) underscores that in consumer cases generally collateral valuation is only required once in a case. Measuring

the undersecured creditor's rights throughout a case based on that valuation accords such a creditor a full measure of fairness. To allow an undersecured creditor to collect a stream of payments under a chapter 13 plan and then also to allow it to claim again the full value of that which served as its collateral while such payments were being made would certainly afford it a windfall, at least in relation to holders of wholly unsecured claims. Such an approach would also diminish the interest of consumer debtors in choosing chapter 13 rather than chapter 7 to address their debts.

■ Finally, NCB's reading of 11 U.S.C. § 349 is simply myopic. Upon dismissal of a case, that section acts to undo the bankruptcy and restore all property rights to the position in which they were found at the commencement of the case only *"as far as practicable"* given the facts of each case. *Jones,* 152 B.R. at 180 (*citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977) (emphasis added)). The operation of § 349 is properly read as addressing the rights of all classes of creditors. To graft into § 1325 the idea that § 349 might allow a holder of a secured claim to keep both a stream of payments received prior to dismissal of a case and the full economic value of collateral that a chapter 13 debtor seeks to "redeem" through his or her plan would be an inappropriate statutory expansion. While no provision of the Code dealing with chapter 13 plan formulation can be ignored in this analysis, a Code provision dealing with potential dismissal cannot act to circumvent the rights specifically granted to chapter 13 debtors. *See In re Murry–Hudson,* 147 B.R. 960, 962–64 (Bankr.N.D.Cal.1992) (for a discussion of the interplay between § 349 and §§ 1322(b)(2) and 1325(a)(5)(B)). *See also In re Newton,* 64 B.R. 790, 793 (Bankr.C.D.Ill. 1986). The challenged plan only requires the release of the lien once NCB has been paid the full present value of its collateral. Such an approach strikes an appropriate balance between the rights of the holder of a secured claim and the debtor.[4]

---

4. Further, Congress has provided means of addressing abusive practices by debtors. *See, e.g.,*

11 U.S.C. § 349(a) (qualifying language that gives a Bankruptcy Court discretion to determine

## IV. CONCLUSION

Based upon the foregoing, this Court determines that a chapter 13 plan may require an undersecured creditor to release its lien on Debtors' property after full payment of its allowed, secured claim, but before full payment of the allowed, unsecured claim that would represent its deficiency claim upon an immediate disposition of the collateral. Given that the Debtors in the case at bar have complied with the requirements of 11 U.S.C. § 1325(a)(5)(B) in that their plan provides for complete payment of the secured portion of NCB's undersecured claim prior to release of the lien, the Court determines that its plan may be confirmed over NCB's objection. As such, NCB's objection is hereby overruled.

**IT IS SO ORDERED.**

if there is cause to dismiss a case with prejudice) and for the application of § 349(a), *see In re Frieouf,* 938 F.2d 1099 (10th Cir.1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992); *In re Cooper,* 146 B.R. 843 (Bankr. D.Colo.1992); and *In re McClure,* 69 B.R. 282 (Bankr.N.D.Ind.1987).