**In re Daniel M. JOHNSON and Linda M. Johnson, Debtors.**

**Bankruptcy No. 97 B 09972.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 21, 1997.

Michael L. Sherman, Terri M. Long, Amy A. Aronson, Sherman & Sherman, Chicago, IL, for Movant.

Robert J. Adams, Brian C. Pedersen, Robert J. Adams & Associates, Chicago, IL, for Respondent or Defendant.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on confirmation of the Chapter 13 plan filed by Daniel M. Johnson and Linda M. Johnson (the "Debtors") and the objection thereto filed by First Midwest Bank (the "Bank"). For the reasons set forth below, the Court overrules the objection and confirms the plan

with the proviso that the disputed plan language cannot be applied to modify the rights of any home mortgage lender protected under 11 U.S.C. § 1322(b)(2).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## II. FACTS AND BACKGROUND

On April 2, 1997, the Debtors filed a Chapter 13 bankruptcy petition and a plan. The plan proposes that the Debtors shall pay the Chapter 13 Standing Trustee $835.00 per month for thirty-six months from which their secured creditors shall be paid 100% of the value of their respective claims after payment of costs of administration. The plan further provides that unsecured creditors shall be paid a dividend of 20% of their respective claims as allowed. The plan contains many of the usual terms and conditions of typical "percentage" plans filed in the Northern District of Illinois, such as a provision that property of the Debtors shall revest upon confirmation of their plan.

The Bank is an undersecured creditor of the Debtors for a debt secured by a lien upon a 1996 Ford Windstar motor vehicle (the "Vehicle"). The current total outstanding balance due the Bank is $23,921.92 plus interest.[1] The Debtors' plan provides for the bifurcation of the Bank's claim pursuant to 11 U.S.C. § 506(a) into a secured component of $16,500.00 plus interest, for a total repayment of $18,889.04 with the remaining balance of $7,421.92 allowed as a general unsecured claim, but paid with a 20% dividend pro rata along with their allowed unsecured claims. The plan provides that, upon payment in full of the secured portion of the Bank's claim, the Bank shall release its lien

1. The valuation of the Vehicle was originally at issue, but in light of the decision in *Associates Commercial Corp. v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the value will be adjusted upward from the plan. The

Debtors relied on the valuation methodology espoused in *In re Hoskins,* 102 F.3d 311 (7th Cir. 1996), which was rejected in *Rash.* Both parties anticipate a settlement of this issue. Hence, the Court will not further address same.

on the Vehicle and surrender the title to the Debtors. Specifically, the plan provides:

> Upon completion of payment of the secured portion of any claim, the property securing said claim shall vest in the debtors free and clear of any lien, claim or interest of a secured creditor. If the security is property for which a release of title is necessary, upon satisfaction of said secured claim, the secured creditor shall furnish a release of said title to the debtors.

The Bank objects to this provision of the plan and contends that it violates 11 U.S.C. § 1325(a)(5)(B)(I) and (ii). Further, the Bank argues that if the case was dismissed after confirmation of the plan or at any time subsequent to the release of its lien, the Bank would be irreparably harmed because it would no longer have a perfected security interest in the Vehicle and the effect of 11 U.S.C. § 349(b) would be improperly circumvented. The Bank contends that it should not be compelled to release its lien and surrender title to the Vehicle until the Debtors complete all payments under their plan and receive a discharge. The Debtors respond that the plan does provide that the Bank retains its lien until the secured component of its claim is satisfied, which is all that § 1325(a)(5)(B)(I) and (ii) requires. They

deny that the disputed plan provision irreparably harms the Bank.

At the continued confirmation hearing, the attorney for the Chapter 13 Standing Trustee advised that all other required elements for confirmation were met and recommended confirmation of the plan, without taking a position on the disputed plan provision. The parties rested on the filed papers and the Court took the matter under advisement. The issue is one on which there is substantial divergence among the various courts because both sides are supported by reasonable arguments, and the Bankruptcy Code does not directly or clearly provide the answer.

### III. DISCUSSION

The issue before the Court—whether the plan can provide that the Bank will retain its lien on the Vehicle only until its allowed secured claim is paid in full and then the lien be

released, or must the Bank retain the lien until the completion of all the payments under the plan—appears to be one of first impression for the Court.

The majority of courts agree that the concept of lien stripping is permissible in Chapter 13 cases.[2] There is a split of opinion, however, regarding the point in time when a

---

**2.** It is undisputed that *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), which prohibits lien stripping via § 506(d) in Chapter 7 cases, does not control here. Nor does this matter involve a prohibited lien strip of residential realty under § 1322(b) proscribed by *Nobelman v. American Savs. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Moreover, before *Dewsnup*, the Seventh Circuit had not rejected the concept of lien stripping per se. *See In re Lindsey*, 823 F.2d 189 (7th Cir.1987). There is a divergence of opinion among some of the bankruptcy judges in this court, like our colleagues in Minnesota (*Compare In re Scheierl*, 176 B.R. 498 (Bankr.D.Minn.1995) *with In re Lee*, 156 B.R. 628 (Bankr.D.Minn.), *aff'd*, 162 B.R. 217 (D.Minn.1993)) and in Indiana (*Compare In re Pruitt*, 203 B.R. 134 (Bankr.N.D.Ind. 1996) *with In re England*, No. 96–90911–BHL–13, slip op. (Bankr.S.D.Ind. Nov. 5, 1996)). The reported Northern District of Illinois opinions thus far, however, have upheld the view that lien stripping of personal property in Chapter 13 plans is permissible under § 1322(b)(2). *Compare In re Hernandez*, 162 B.R. 160 (Bankr. N.D.Ill.1993) (does not allow lien stripping), *rev'd*, 175 B.R. 962 (N.D.Ill.1994) *with In re Flowers*, 175 B.R. 698 (Bankr.N.D.Ill.1994) (allows lien stripping), *aff'd sub nom. Bank One, Chicago, NA v. Flowers*, 183 B.R. 509 (N.D.Ill. 1995). The ability to strip a creditor's undersecured lien, via § 1322(b)(2), from its collateral is similar, but not exactly identical, to the plan provision at bar which requires the lien to be released only when the Bank's secured component of its claim is paid in full, but not its unsecured component. The functional, practical effect, however, is virtually identical. The Court is of the view that § 506(d) is really not implicated in the instant plan provision, nor do the Debtors cite to it in their papers. Rather, the principal statutory provisions relied on are §§ 1322(b)(2) and 1325(a)(5). There is no "voiding" of the lien under § 506(d), but rather, a plan providing for satisfaction and payment of the secured component of the Bank's claim after which the Bank shall release the lien as paid. This is a distinction with a real difference. Because the *Dewsnup* case prohibits use of § 506(d) to strip liens in Chapter 7 cases, the real issue here is whether the Debtors can compel the Bank to release the lien on the Vehicle's title once the secured component has been paid in full via §§ 1322(b)(2) and 1325(a)(5).

creditor's lien should be extinguished. Some courts hold that even if the creditor's lien is satisfied upon full payment of the secured portion of the claim, the collateral may not vest in debtors free and clear of the lien prior to completion of the plan and their discharge. *See, e.g., In re Zakowski,* ——— B.R.———, 1997 WL 627396 (Bankr.E.D.Wis. Sept. 10, 1997); *In re Pruitt,* 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995); *In re Gibbons,* 164 B.R. 207 (Bankr.D.N.H.1993); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich. 1993); *In re Holiday,* 1993 WL 733165 (Bankr.S.D.Ga. March 30, 1993). The rationale espoused in this line of cases concludes that release of the lien prior to the completion of the plan provides an inappropriate and untimely windfall to debtors who elect to dismiss or convert the case after paying only the secured portion of the debt.

Other courts have held that, upon payment of the secured component of a creditor's claim, the property can then be properly titled in the debtor free of the lien. *See, e.g., In re Lee,* 156 B.R. 628 (Bankr.D.Minn.), *aff'd,* 162 B.R. 217 (D.Minn.1993); *In re Nicewonger,* 192 B.R. 886 (Bankr.N.D.Ohio 1996); *In re Mandrayar,* 174 B.R. 289 (Bankr.S.D.Cal.1994); *In re Campbell,* 160 B.R. 198 (Bankr.M.D.Fla.1993), *aff'd sub nom., IRS v. Campbell,* 180 B.R. 686 (M.D.Fla.1995); *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992); *In re England,* No. 96–90911–BHL–13, slip op. (Bankr. S.D.Ind. Nov. 5, 1996). *See also* 1 K. Lundin, *Chapter 13 Bankruptcy* § 4.28 at 4–24 (2d ed.1994 and 1996 Cumulative Supp.) ("The courts allowing Chapter 13 plans to release liens upon payment of the underlying allowed secured claim have the better of this disagreement."); 8 *Collier on Bankruptcy* § 1325.06[3] at 1325–28—30 (15th ed.1997).

These courts and commentators focus their rationale on the various sections of the Bankruptcy Code as well as the legislative history.[3]

It is unnecessary to restate all of the various positions and analyses taken by these courts in the above cited cases. Rather, the Court will articulate its own views to add to the current debate on the issue without repeating all of the points previously made by the other courts both for and against the issue at bar, but hopefully applying some other and different observations and considerations.

The principal Code provision involved on this issue is § 1325 because it addresses the contested confirmation of a Chapter 13 plan and provides that a court shall confirm a Chapter 13 plan over the objection of a holder of a secured claim if:

> (I) the plan provides that the holder of such claim retain the lien securing *such claim;* and
>
>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of *such claim.*

11 U.S.C. § 1325(a)(5)(B)(I) and (ii) (emphasis supplied). Although this provision specifically provides that a secured creditor must retain its lien, the duration thereof is not mandated and it does not directly address whether the creditor must be accorded its lien rights only until the secured portion of the claim has been paid in full or until all payments on the unsecured portion of the claim are complete. *See Nicewonger,* 192 B.R. at 888. The Court agrees with the *England* decision that "such claim" can only logically refer to the secured component of

---

3. The legislative history accompanying the addition of the lien retention language to § 1325 states:

Of course, the secured creditors' [sic] lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(I) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim. To the extent the deferred payments exceed the value of the allowed amount of the secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payments.

124 Cong.Rec. H11, 107 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6481–82; 124 Cong.Rec. S17, 423 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6550–51.

the Bank's claim for purposes of this matter, not the unsecured component. *England,* slip op. at 7.

The Court concludes that the better view is that espoused in the line of cases which rely on §§ 1325(a)(5)(B) and 1322(b)(2) allow a debtor to obtain a release of the lien upon payment in full of the secured portion of the debt even if prior to the completion of the plan. Section 1322(b)(2) expressly allows a debtor to "modify the rights of holders of secured claims...." 11 U.S.C. § 1322(b)(2).[4] Section 1322(b)(2) does not limit the power to modify the rights of secured creditors to "payment terms." *See Flowers,* 175 B.R. at 700. Moreover, § 506(a) further supports the conclusion that the lien should be released upon payment of the secured portion of the bifurcated claim which may occur prior to completion of the plan. After all, § 506(a) allows bifurcation of an undersecured creditor's claim into secured and unsecured portions which can then be allowed under § 502(a). Section 1322(b)(2) coupled with § 506(a) "demonstrates that the holder of an undersecured claim has been accorded due process upon the receipt of the present value of its collateral through plan payments and can be required to release its lien prior to the payment of any dividend provided by the chapter 13 plan on the unsecured portion of the amount owing to it." *Nicewonger,* 192 B.R. at 889.

When the secured portion of the allowed claim is established under § 506(a), the plan must provide that the "holder of such claim retain the lien securing such claim...." 11

U.S.C. § 1325(a)(5)(B)(I). "[U]nder § 1325(a)(5)(B) ... the only lien retained is the lien securing the secured claim; that is, the claim to the extent of the value of the collateral." *Flowers,* 175 B.R. at 701. If a creditor were to retain the lien after such claim was paid, it would be securing a different claim, and there is no language in the Code which would support this result. *See England,* slip op. at 7. In other words, for purposes of this matter, the Vehicle title should not be properly held "hostage" to secure the creditor's remaining unsecured claim after bifurcation under § 506(a) has occurred and the secured portion of the claim has been paid in full.

The Court finds that the extant plan complies with all of the foregoing provisions of the Code. The plan provides that, upon confirmation, all property of the estate, including the Vehicle, shall vest in the Debtors subject to liens. It further provides that, when the Bank has received the full amount of its allowed secured claim, upon payment of that claim in full, the lien should be released and the Bank should surrender title to the Vehicle. To require a release only when the remainder of the plan payments to the unsecured claims have been paid and the Debtors receive a discharge, seems to make the bifurcation process of § 506(a) of no consequence and virtually relegates the effect of the modification provisions of § 1322(b)(2) to the end of a successful case.

The Court does not agree with the Bank that this result will allow the Debtors to circumvent § 349(b)[5] and force an effective

---

**4.** The limitations of § 1322(b)(2) by which modification of rights of secured lenders who hold claims against only a debtor's principal residence are inapplicable to the Bank's car loan to the Debtors. The result in this matter would be reversed if the Bank held only a mortgage on the Debtors' home and the mortgage balance exceeded the replacement value of the home determined under the *Rash* decision.

**5.** Section 349(b) provides in pertinent part:
(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
(1) reinstates—

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this

title, or preserved under section 510(c)(2), 522(I)(2) or 551 of this title; and
(c) any lien voided under section 506(d) of this title;
(2) vacates any order, judgment, or transfer ordered, under section 522(I)(1), 542, 550, or 553 of this title; and
(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.
11 U.S.C. § 349(b).

evisceration of the Bank's rights without fulfilling their duties under the Code and obtaining a discharge. Contrary to the Bank's argument that § 349(b) completely restores the status quo ante, the Court notes that the language of § 349(b) neither mentions nor attempts to undo what modifications to a creditor's claim may have previously occurred in a bankruptcy case under §§ 506(a), 1322(b)(2) or 1325(a)(5)(B). Had Congress intended to undo a debtor's ability to so modify an undersecured creditor's rights under §§ 1322(b)(2) and 1325(a)(5), § 349(b) could have easily contained references thereto. Thus, the Court concludes that the Debtors' ability to modify the Bank's claims can be effective prior to successful completion and confirmation of a Chapter 13 plan without offending those creditors' rights protected under § 349(b).

Consideration of what happens to the parties' economic interests bears review. Indeed, if the Debtors suffer either a voluntary or involuntary dismissal of the case prior to completion and consummation of their plan, they not only lose the in personam benefit of the discharge under § 1328, but would be liable for the full remaining unsecured and unpaid portion of the Bank's claim even if they had paid the secured portion in full. Because this is only a 20% plan for unsecured creditors, the Debtors have a substantial economic incentive to keep the plan going to full consummation and obtain a discharge under § 1328(a) for all allowed unsecured claims by paying only twenty cents on the dollar, rather than face the prospect of being liable for the full amount of all unpaid claims upon the dismissal of the case. Practical considerations of what really happens and the effects of what may happen if the confirmed plan fails should also factor into the Court's consideration.

The Court agrees with the view that the policy of affording the Debtors a fresh start overrides the concern about the potential of abuse which could occur if the Debtors paid off the secured portion of the claim and then failed to complete the plan and perhaps sold the Vehicle or used it as collateral for another loan from another creditor. *See Nicewon-*

*ger,* 192 B.R. at 890. As the *Nicewonger* court aptly noted:

> To graft into § 1325 the idea that § 349 might allow a holder of a secured claim to keep both a stream of payments received prior to dismissal of a case and the full economic value of collateral that a chapter 13 debtor seeks to "redeem" through his or her plan would be an inappropriate statutory expansion. While no provision of the Code dealing with chapter 13 plan formulation can be ignored in this analysis, a Code provision dealing with potential dismissal cannot act to circumvent the rights specifically granted to chapter 13 debtors.

*Id.* (citing *Murry–Hudson,* 147 B.R. at 962–64).

The potential fears about the adverse effects of a failed plan to the Bank should not be viewed with respect to it alone. The effects on the Debtors must also be considered. If the case was converted to Chapter 7, the creditor's rights might be impaired more so than if the case was dismissed. However, the end result would likely be similar. Unlike § 349(b)(1)(C), § 348 does not revive liens that have been avoided pursuant to § 506(d). If the debt was dischargeable under § 523(a) and no creditor prevailed on an objection to discharge under § 727(a), the unsecured portion of the creditor's claim would be discharged.

Indeed, if the case and plan fail after the Debtors have paid the Bank's secured claim component in full and the case converts to Chapter 7, with the lien unreleased, the Debtors would face the less than equitable prospect of having to reaffirm with the Bank in order to keep the Vehicle, surrender it, or redeem it for cash pursuant to § 722. *See In re Edwards,* 901 F.2d 1383 (7th Cir.1990). None of these results are particularly fair alternatives if, at that point, the Debtors have paid the full amount of the replacement value of the Vehicle, plus interest, while the plan was pending prior to conversion. Such a result would subvert the obvious effects of § 348(f)(1)(B) which provides in pertinent part: "when a case under chapter 13 of this title is converted to a case under another chapter ... with allowed secured claims *reduced* to the extent that they have been paid

in accordance with the chapter 13 plan." 11 U.S.C. § 348(f)(1)(B) (emphasis supplied).

The high failure rates of Chapter 13 plans, as argued by the Bank, does not change the foregoing analysis. Moreover, it is bootless to argue possible future ulterior motives by the Debtors if they would seek or suffer a dismissal after paying the Bank's secured claim in full. First, the Debtors have an almost absolute right to dismiss at any time under § 1307(b). Second, once the Bank's lien is paid in full to the extent of the Vehicle's replacement value plus interest, what real difference does it make as to the reason the case would be dismissed anyway? The Bank's lien claim at that point has been paid in full to the extent of the Vehicle's value under the *Rash* decision.

In short, the Court rejects the Bank's argument that the lien release in rem must wait until the Debtors' in personam discharge occurs. Rather, the Court concludes that a Chapter 13 plan may require an undersecured creditor to release its lien on a debtor's personal property after full payment of its allowed secured claim, but before full payment of the allowed unsecured portion of the claim and prior to completion of the plan and discharge. The Debtors in the matter at bar have complied with the requirements of § 1325(a)(5)(B) in that their plan provides for complete payment of the secured portion of the Bank's undersecured claim prior to the release of the lien. Hence, the Court overrules the objection to confirmation and finds that the instant plan shall be confirmed over the Bank's objection in light of the Chapter 13 Standing Trustee's recommendation.

### IV. *CONCLUSION*

For the foregoing reasons, the Court overrules the objection and confirms the plan subject to the proviso that the disputed plan language cannot be applied to modify the rights of any home mortgage lender protected by § 1322(b)(2).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.