### In re Timothy SHORTER and Marlo Shorter, Debtors.

#### Bankruptcy No. 99 B 8297.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 17, 1999.

David E. Linde, Chicago, IL, for Debtor.

Thomas Vaughn, Chicago, IL, trustee.

### RULING ON OBJECTION TO CONFIRMATION

JOAN H. LEFKOW, Bankruptcy Judge.

Debtors, Timothy and Marlo Shorter, seek relief under chapter 13 of the United States Bankruptcy Code (the "Code") and have submitted an Amended Chapter 13 Plan (the "Plan") for confirmation. Ford Motor Credit Corporation ("FMCC"), a lender who provided financing to debtors for the purchase of an automobile, objects to confirmation alleging that certain provisions of the Plan are contrary to the Code and render the Plan internally inconsistent and ambiguous.

### JURISDICTION AND PROCEDURE

The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### FACTS

On June 1, 1999, debtors filed the Plan. It proposes that debtors will pay $855.00 per month to the Chapter 13 Standing Trustee for a period of 36 months from which creditors with secured or § 507[1] priority claims "shall be paid 100%." The Plan estimates that any general unsecured creditors will receive ten percent of their claims during the life of the Plan, but if not, it provides that debtors will continue their monthly plan payments for the shorter of 24 additional months or until the

---

1. All statutory references are to Title 11 of the United States Code unless otherwise noted.

Trustee has received enough to pay the unsecured creditors ten percent of their claims.

The Plan further recites that one of the three alternative tests set out in § 1325(a)(5) have been satisfied with respect to the holder of each allowed secured claim. More specifically, the Plan states that each such claim holder has accepted the Plan; will receive surrender of the property securing the claim; or, will retain its lien securing the claim and that the property to be distributed to that claimant has, as of the effective date of the Plan, a value equivalent to the allowed amount of that secured claim. Plan, ¶ 5. Where a secured claim holder retains its lien, the Plan further provides that upon payment of the secured portion of the claim, the property securing the claim shall vest in the debtors "free and clear or any lien, claim or interest of any creditor." [2] Plan, ¶ 6.

FMCC is a secured creditor of debtors by virtue of the financing it provided for the purchase of debtors' 1991 Chevy Blazer (the "Blazer"). The debt is at least partially secured by a lien on the Blazer. Although FMCC has not filed a proof of claim, it alleges that debtors owe $11,810.92 on the Blazer. In their petition, debtors valued FMCC's secured claim at $5,000.00.

### DISCUSSION

FMCC objects to the confirmation of the Plan contending that paragraph 6 of the Plan improperly allows property which debtors have used as collateral to revest in debtors upon full payment of the secured portion of the claim, an event which could occur well before debtors receive a dis-

charge. Although recognizing a division in authority regarding the propriety of provisions like paragraph 6, debtors urge the court to follow those cases which find that chapter 13 plans may provide that a creditor will retain its lien on collateral only until the allowed secured claim is paid in full. FMCC replies that 1) the Code does not expressly authorize release of liens prior to discharge and, therefore, the cram down provisions of § 1325(a)(5)(B) should be strictly construed to require lien retention until discharge; 2) the alteration of the debtor/creditor relationship prior to discharge is a benefit only offered under chapter 11; 3) the property available to creditors may be irreparably diminished if debtors dismiss or convert their case to chapter 7 after the lien is released; and 4) paragraph 6 is at odds with paragraphs 3 and 5(b) thus, rendering the Plan internally inconsistent and incapable of proper administration.

The court concludes that § 1322(b) of the Code provides the authorization necessary for chapter 13 plans to release liens upon full payment of the secured portion of a debt. This section provides that chapter 13 plans may "modify the rights of holders of secured claims," except for claims secured by a lien against a debtor's principal residence. Other than the exception noted, the Code provides no limitations on the types of rights which can be modified. Although FMCC does not discuss the effect of § 1322, the court notes that there is an argument that § 1322(b) should not be used, as debtors do here, to modify or extinguish the lien retention rights that make up the cram down provision of § 1325(a)(5)(B).[3] The theory is that, in a contested confirmation where the

---

2. Paragraph 6 in its entirety provides:
   Except as provided in 11 U.S.C. § 1328(a), and except as provided in this plan, schedules or the order confirming this plan, upon completion of payment of the secured portion of any claim, the property securing said claim shall vest in the Debtor free and clear of any lien, claim or interest of any creditor provided for by this plan, pursuant to 11 U.S.C. § 1327(b).

3. This section provides that the court shall confirm the plan over objections if the plan provides that the holder of each secured claim will retain the lien securing its claim, and if the value, as of the effective date of the plan, of property to be distributed under the plan on account of each secured claim is not less than the allowed amount of the claim.

plan does not provide for the surrender of the collateral, a debtor cannot be certain of confirmation unless the plan complies with the cram down provision. So the ability to modify creditors' rights should not be used to extinguish a right required for the cram down. Having posited it, the court finds this argument unpersuasive.

■ Without the statutory cram down requirement, all property of the estate would revest in the debtor upon confirmation of the debtor's plan, potentially eliminating existing liens upon confirmation. § 1327(b). It seems apparent then that the § 1325 cram down provision is meant to protect the holders of allowed secured claims from loss of their secured interest if a debtor fails to complete its plan. Nothing in § 1325, however, mandates how long a secured creditor must retain its lien to fulfill this purpose. FMCC argues that this statutory silence indicates that liens should remain in force until discharge, but this court disagrees. First, § 506(a) bifurcates undersecured claims into secured and unsecured portions. As a result, " 'the only lien retained is the lien securing the secured claim; that is, the claim to the extent of the value of the collateral.' " *In re Johnson,* 213 B.R. 552, 556 (Bankr. N.D.Ill.1997), *quoting, In re Flowers,* 175 B.R. 698, 701 (Bankr.N.D.Ill.1994). Similarly, as Collier points out, the legislative history of § 1325 expressly states that " 'the secured creditors' [sic] lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full.' " 8 Collier on Bankruptcy § 1325.06[3][a], at 1325–29 (15th ed.1998), *quoting,* 124 Cong. Rec. H11,107 (Sept. 28, 1978)(remarks of Rep. Edwards) *reprinted in* U.S.Code Cong. & Admin. News 6481–82; 124 Cong. Rec. S17,423 (Oct. 6, 1978)(remarks of Sen. De-Concini), *reprinted in* 1978 U.S.Code & Admin. News 6550–51. The purpose of the § 1325 cram down provision is fulfilled upon full payment of the secured portion

of the debt. To require that the lien be retained after full payment of the secured portion of a debt serves a different purpose, to secure the remaining unsecured portion of the claim, which is an expansion of secured creditors' rights that is not found in the Code. *See Johnson,* 213 B.R. at 556. On the other hand, modifying a secured creditor's rights after payment of the secured portion protects the creditor as provided in § 1325 without expanding its rights beyond those provisions.

■ FMCC's next argument that § 1322 merely allows *modification,* not *termination,* of creditors' rights also lacks merit. FMCC's rights are not terminated by the Plan. FMCC retains the right to full payment of the secured portion of its claim before the lien is released as well as the right to obtain further recovery along with other undersecured creditors. While the proposed modification here may mimic a benefit available under chapter 11, that alone is does not prohibit its use.

■ FMCC's last two arguments concern potential abuse of the bankruptcy system if debtors convert or dismiss their case after they obtain clear title to the Blazer but before they receive a discharge. After carefully considering the potential abuses that FMCC has identified and the case law on both sides of the issue, this court finds that *Johnson* and the cases which it followed have reached the better result. *See, e.g., In re Nicewonger,* 192 B.R. 886 (Bankr.N.D.Ohio 1996); *IRS v. Campbell,* 180 B.R. 686 (M.D.Fla.1995); *In re Mandrayar,* 174 B.R. 289 (Bankr. S.D.Cal.1994); *In re Lee,* 156 B.R. 628 (Bankr.D.Minn.), *aff'd,* 162 B.R. 217 (D.Minn.1993). In general, these cases conclude that the interest in affording debtors a fresh start outweighs the potential for abuse of the system. Often the potential for abuse is low. In *Johnson,* as is true here, the proposed plan, provided that debtors would receive a discharge after paying unsecured creditors a small percentage of the total unsecured debt. Without the discharge, debtors would be

liable for the full amount of the remaining unsecured claims. Thus, debtors here have a significant incentive to complete the Plan even after obtaining title to the Blazer.

██ Additionally, the identified abuse does not appear to be as egregious as FMCC urges especially when considered in light of the competing interests of other interested parties. FMCC asserts that if debtors obtain a release of the lien, but then sell or reencumber the Blazer, the property of estate that might otherwise be available to creditors could be substantially diminished if the case is later converted to chapter 7 or dismissed. In the context of dismissal, FMCC maintains that once the property is sold or re-encumbered, the original secured creditor can no longer be restored to its prebankruptcy position as provided by § 349. While FMCC has correctly identified a potential harm, it must be recognized that § 349 is only intended to restore parties to their prebankruptcy positions "as far as practicable." Significantly, that section contains no provisions that would undo any modification of creditors' rights made pursuant to § 1322(b). Further, FMCC's analysis ignores the fact that no lien is released under the Plan until the full amount of the allowed secured claim has been paid. Thus, at the time of release, FMCC will have received what it is entitled to receive as a secured claim holder. To require the lien to remain intact thereafter would seemingly provide FMCC with a windfall to the detriment of other unsecured creditors in the event of dismissal, i.e., FMCC would keep the stream of payments that it received on its secured claim prior to dismissal and it would also retain the full economic value of the collateral to secure the remaining unsecured portion of its claim. *Johnson,* 213 B.R. at 557; *Nicewonger,* 192 B.R. at 890. Similar considerations would be at issue if debtors chose to convert to a proceeding under chapter 7.

If the case and plan fail after the Debtors have paid the Bank's secured claim component in full and the case converts to Chapter 7, with the lien unreleased, the Debtors would face the less than equitable prospect of having to reaffirm with the Bank in order to keep the Vehicle, surrender it, or redeem it for cash pursuant to § 722. (Citation omitted) None of these results are particularly fair alternatives if, at that point, the Debtors have paid the full amount of the replacement value of the Vehicle, plus interest while the plan was pending prior to conversion.

*Johnson,* 213 B.R. at 557. Certainly, such a scenario would be contrary to the outcome intended under § 348(f)(1)(B) which provides that "valuations of property and of allowed secured claims in a chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan." *See also Johnson,* 213 B.R. at 557.

FMCC's final argument is that the Plan is internally inconsistent and therefore incapable of proper administration. It points to the language in paragraph 3 that secured claims will "be paid 100%" and in paragraph 5 that holders of secured claims "will retain their liens" as being irreconcilable with paragraph 6. Although carelessly worded, the reach of paragraph 3 is bounded by § 506 which limits the allowed amount of secured claims to the value of the collateral. Because paragraph 6 of the Plan only proposes release of liens after full payment of the secured portion of a claim, it is consistent with paying the allowed amount of the secured portion of claim 100%. While the meaning of Plan might have been more discernable if debtors had said that the "allowed amount of the secured portions of claims will be paid 100%," the court does not believe that paragraph 3 renders the Plan unconfirmable. Similarly, paragraphs 5 and 6 are not inconsistent. Paragraph 5 states that holders of secured claims will retains their liens without addressing whether there are any limitations to that right. Paragraph 6

goes on to describe such a limitation. The latter paragraph merely clarifies the former and creates no barrier to the proper administration of this estate.

### CONCLUSION

For the above reasons, FMCC's objection to the confirmation of Debtors' Amended Chapter 13 Plan is hereby overruled.