**In re Daphne G. TOWNSEND, Debtor.**

**No. 00 B 15029.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 5, 2001.

Ronald F. Grossman, Grossman, Mitzenmacher & Schechter, Chicago, IL, for plaintiff.

Lorraine M. Greenberg, Chicago, IL, for defendant.

Tom Vaughn, Chicago, IL, trustee.

***MEMORANDUM OPINION ON OBJECTION TO CONFIRMATION AND MOTION TO MODIFY STAY***

JACK B. SCHMETTERER,
Bankruptcy Judge.

This matter is before the Court on General Motors Acceptance Corporation's ("GMAC") motion to modify stay pursuant to 11 U.S.C. § 362(d) and its objection to confirmation of the Chapter 13 plan filed by Daphne G. Townsend (the "Debtor"). For the reasons set forth below, the Court overrules the objection and denies GMAC's motion to modify the stay.

**I. JURISDICTION AND PROCEDURE**

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (L).

## II. FACTS AND BACKGROUND

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on May 18, 2000, Title U.S.C. § 101 *et seq.*, (hereinafter "Code"). On August 2, 2000 the Debtor filed her amended Chapter 13 plan (the "Plan"). The Plan proposes that the Debtor shall pay the Chapter 13 Trustee $310.00 per month for thirty-six months. These payments will satisfy one hundred percent of priority claims and one hundred percent of the claim secured by the Debtor's home. Other secured creditors, including GMAC, will receive one hundred percent of the value of their security and any claim amount that exceeds such value will be paid as an unsecured claim. The Plan estimates that general unsecured creditors will receive ten percent of their claims during the 36–month life of the Plan, but also provides the Debtor will continue her monthly plan payments for the shorter of twenty-four additional months or until the Trustee has received enough to pay the unsecured creditors ten percent of their claims if that is not paid during the first 36 months.

The Plan also states that one of the three alternative tests set out in § 1325(a)(5) have been satisfied with respect to the holder of each allowed secured claim: That the holder of each claim (1) has accepted the Plan; (2) will receive surrender of the property securing the claim; or (3) will retain its lien securing the claim and the property to be distributed to the claimant has, as of the effective date of the Plan, a value equivalent to the allowed amount of that secured claim. Plan, ¶ 6. Where a secured claim holder retains its lien, the Plan further provides that "upon completion of payment of the secured portion of any claim, the property securing such claim shall vest in the debtor free and clear of any lien, claim or interest of the secured creditor." Plan, ¶ 5.

GMAC is an undersecured creditor of the Debtor for a debt secured by a lien upon a 1999 Chevrolet Cavalier motor vehicle (the "Vehicle"). The current total outstanding balance due GMAC is $15,639.74. The Debtor listed the current market value of the vehicle in her petition at $10,500. The value of the vehicle has not yet been adjudicated, though GMAC argues that the Debtor is bound by the value stated in her petition.

GMAC objects to confirmation of the Plan because it states that "upon completion of payment of the secured portion of any claim, the property securing such claim shall vest in the debtor free and clear of any lien...." Plan, ¶ 5. This type of language in a plan is often referred to as a "lien stripping" or "strip down" provision. GMAC contends that the Court cannot confirm a plan that strips the secured party of its lien upon the Debtor's satisfaction of the secured portion of the claim prior to completion of all plan payments. It argues under the Code that the Debtor must complete all payments under the Plan in order for the security to vest in the Debtor free and clear of a lien.

The undersigned held seven years ago that 11 U.S.C. § 506(d) does not allow a debtor to strip down a creditor's lien when such creditor's claim is secured by a lien and has been fully allowed pursuant to Code § 502, but was reversed. *In re Hernandez*, 162 B.R. 160, 165 (Bankr.N.D.Ill. 1993), rev'd, 175 B.R. 962 (N.D.Ill.1994). Other courts have also held that lien stripping should not be permitted. *See, e.g. In re Thompson*, 224 B.R. 360 (Bankr. N.D.Tex.1998); *In re Zakowski*, 213 B.R. 1003 (Bankr.E.D.Wis.1997); *In re Pruitt*, 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Scheierl*, 176 B.R. 498 (Bankr.D.Minn. 1995); *In re Gibbons*, 164 B.R. 207 (Bankr. D.N.H.1993); *In re Jones*, 152 B.R. 155 (Bankr.E.D.Mich.1993); *In re Holiday*, 1993 WL 733165 (Bankr.S.D.Ga. March 30, 1993).

Three other opinions by Bankruptcy Judges in the Northern District of Illinois have interpreted relevant Code provisions to allow lien stripping in Chapter 13 cases. *See In re Shorter*, 237 B.R. 443 (Bankr. N.D.Ill.1999, Lefkow, J.); *In re Johnson*,

213 B.R. 552 (Bankr.N.D.Ill.1997, Squires, J.); and *In re Flowers*, 175 B.R. 698 (Bankr.N.D.Ill.1994, Barliant, J.), aff'd sub nom. *Bank One, Chicago v. Flowers*, 183 B.R. 509 (N.D.Ill.1995). A panel of the Seventh Circuit recently declined to address lien stripping leaving this issue for future determination. *In re Harvey*, 213 F.3d 318, 323 (7th Cir.2000). For reasons discussed below, the decision here is to follow other Bankruptcy Judges and District Court trial judges in this District who have found the law to allow lien stripping.

## III. DISCUSSION

■ Bankruptcy Code provisions in 11 U.S.C. § 1325(a)(5) and § 506(a) and (d), are relevant to determination of whether lien stripping is permissible in a Chapter 13 case. Section 1325(a)(5)(B) provides that a court shall confirm a Chapter 13 plan over objection of a holder of an allowed secured claim if (i) the plan provides that the holder of such claim retains the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). It is clear from statutory language that the party holding an allowed secured claim must retain its lien.

Code § 103(a) applies provisions of Chapter 5 of the Bankruptcy Code to Chapter 13 cases. Section 506 within Chapter 5 of the Code defines the term "allowed secured claim" in subsections (a) and (d). Section 506(a) provides in relevant part: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . ." 11 U.S.C. § 506(a). In other words, a claim is allowed and secured only to the extent of the value of the security. Section 506(d) suggests an additional meaning to the term "allowed secured claim," providing in relevant part:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless— (1) such claim was disallowed only under § 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under § 501 of this title.

11 U.S.C. § 506(d). The Supreme Court has held in a case prohibiting strip-down of real estate that although the words "allowed secured claim" in § 506(a) means the amount of claim that equals value of the security, in § 506(d) the very same words mean an amount that includes both the secured and unsecured portions of the claim. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). Some courts have found this discrepancy between § 506(a) and (d) troubling. *See Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 834, FN4 (1st Cir. BAP 2000) (noting the growing debate among bankruptcy courts regarding the meaning of allowed secured claim in § 506(a) and (d)).

The *Dewsnup* court held that a Chapter 7 debtor could not "strip down" a creditor's lien on real estate if such creditor was secured by a lien that had been fully allowed pursuant to § 502. *Dewsnup v. Timm*, 502 U.S. at 417, 112 S.Ct. 773. The *Dewsnup* opinion acknowledged that the high Court was attributing two different meanings to the term "allowed secured claim" and explained:

> Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take on the same meaning in § 506(d) as in § 506(a). But given the ambiguity of the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*Dewsnup v. Timm*, 502 U.S. at 417, 112 S.Ct. 773, (footnote omitted).

The issue here is whether the term "allowed secured claim" should be read in Code § 1325(a)(5) to mean the value of the collateral (as the term is defined in 506(a)), or the amount of the entire indebtedness (as *Dewsnup* held as to property involved in that case that "allowed secured claim" was defined in 506(d)).

If an "allowed secured claim" is merely the secured component of the claim as it is in § 506(a), then the lien need only be retained to the extent of the value of the collateral. On the other hand, if an "allowed secured claim" is defined as the entire amount of the indebtedness as it is in § 506(d), then the lien should be retained until both the secured and unsecured portions of the claim have been satisfied.

Although the words "allowed secured claim" in § 1325(a)(5) can reasonably be interpreted in accordance with either § 506(a) or § 506(d), most courts in the Northern District of Illinois have taken the position that "allowed secured claim" in § 1325(a)(5) should agree with the meaning of the term in § 506(a). *See In re Shorter,* 237 B.R. 443 (Bankr.N.D.Ill.1999); *In re Johnson,* 213 B.R. 552, 555–56 (Bankr.N.D.Ill.1997); *Bank One, Chicago v. Flowers,* 183 B.R. 509, 516 (N.D.Ill. 1995); and *In re Hernandez,* 175 B.R. 962 (N.D.Ill.1994). The alternative position stated in the original *Hernandez* opinion was that "allowed secured claim" refers to the entire claim including the unsecured portion of the claim, and that was one possible reading of the law. But this Court now finds in favor of the Debtor, and follows the majority reading that the terms "allowed secured claim" and "such claim" in § 1325(a)(5) should agree with the meaning of "allowed secured claim" in § 506(a) rather than § 506(d).

This position will now be followed because Code § 1322(b) provides that Chapter 13 plans may "modify the rights of holders of secured claims". This section "provides the authorization necessary for Chapter 13 plans to release liens upon full payment of the secured portion of a debt." *In re Shorter,* 237 B.R. 443, 445 (Bankr. N.D.Ill.1999). GMAC argues convincingly that the Code's use of the word "modify" is evidence that Congress did not intend to permit a plan to provide for the termination of the rights of secured claimants. GMAC's rights, however, would not be terminated by this Plan. Under the Plan, GMAC will retain the right to full payment of the secured portion of its claim before the lien is released as well as the right to recover a part of its unsecured claim along with other unsecured creditors.

■ The purpose of Code § 1325(a)(5) also supports this conclusion. The goal of § 1325(a)(5) (the so called "cramdown" provision) is to place creditors in the same position that they would have been had their collateral had been repossessed and sold at the time of bankruptcy filing. *In re Palmer,* 224 B.R. 681, 683 (Bankr. S.D.Ill.1998). By interpreting the words "allowed secured claim" in § 1325(a)(5) to mean an amount equal to value of the secured portion of the claim, this "cramdown" provision effectively provides non-consenting secured creditors with a stream of payments that has a present value equal to value of the collateral. In this case under the Plan the Debtor will provide payments to GMAC that equal value of the vehicle on the day the Debtor's Plan is confirmed.

■ Therefore it is appropriate that the Plan provides that the Debtor's vehicle may vest free and clear of GMAC's lien after the Debtor has satisfied the secured portion of the indebtedness. The Supreme Court has held that in ascertaining the value of property retained by a Chapter 13 debtor, the court should determine the replacement-value of the collateral or "the cost the debtor would incur to obtain a like asset for the same proposed . . . use." *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 965, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997) (internal quotations

omitted).[1] As a result, the value of the vehicle, and therefore the amount of GMAC's "allowed secured claim", shall be determined as of the day the Plan is confirmed by this Court, *In re Jones,* 219 B.R. 506, 509 (Bankr.N.D.Ill.1998), by litigation if the parties cannot agree on such value.

## IV. CONCLUSION

For the foregoing reasons, GMAC's motion to modify stay is denied and its objection to confirmation of the Debtor's Chapter 13 plan is hereby overruled. The value of the vehicle shall be determined at a later date upon notice of motion and motion by Debtor for such determination.

---

**1.** The *Rash* court instructed that although it determined that replacement-value governs in cram-down cases, it "le[ft] to the bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value." *Associates Commercial Corp. v. Rash,* 520 U.S. at 965, 117 S.Ct. 1879, FN6. "Where the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary: A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning. Nor should the creditor gain from modifications to the property—e.g., the addition of accessories to a vehicle—to which a creditor's lien would not extend under state law." *Id.*