**In re Henry C. HINK, Jr. and Jane E. Hink, Debtors.**

**Bankruptcy No. FA 86–115 F.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

April 13, 1987.

Ronald L. Boyer, Rogers, Ariz., for debtors, Henry C. and Jane E. Hink.

Rickard W. Hood, Bentonville, Ariz., for Bank of Bentonville.

A.L. Tenney, trustee, pro se, Little Rock, Ark.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Pending before the Court is the Objection to Confirmation of the chapter 13 plan of Henry C. Hink, Jr. and Jane E. Hink, debtors, filed by the Bank of Bentonville, Bentonville, Arkansas. The Bank of Bentonville has objected to confirmation on the grounds that the plan does not propose that the Bank retain the liens securing its claim pursuant to 11 U.S.C. § 1325(a)(5)(B)(i). An evidentiary hearing was held on February 11, 1987, after which the parties agreed to submit stipulations of facts and briefs to the Court regarding the pertinent issues. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. The following constitute the Court's findings of fact and conclusions

of law as required by Bankruptcy Rule 7052.

## Findings of Fact

Based upon the parties' stipulations and evidence presented to the Court, the following constitute the Court's findings of fact.

1. The debtors, Henry C. Hink, Jr. and Jane E. Hink ("debtors") filed a voluntary chapter 13 petition on June 13, 1986, and proposed the pending plan of reorganization on October 6, 1986.

2. Under their plan, the debtors propose to sell five acres of land from their homestead to pay toward claims of the United States Internal Revenue Service and the State of Arkansas for pre-petition taxes.

3. The debtors' homestead, which is claimed as exempt, consists of a house and eighteen acres of rural land and is subject to a first lien of Federal Land Bank and a second lien of the Bank of Bentonville. The house and eighteen acres are valued at approximately $85,000.00.

4. The debtors are indebted to the Bank of Bentonville in the amount of $34,857.82. To secure the indebtedness, the Bank holds a first lien on commercial property used as an office building located in Rogers, Arkansas. The commercial property has been sold on a contract for sale of real estate, to which the Bank has consented. The contract of sale has an unpaid balance of approximately $84,500.00.

5. To further secure the indebtedness the Bank of Bentonville holds a second lien on the debtors' homestead which, as stated above, is subject to the first lien of the Federal Land Bank in the amount of $15,-000.00.

6. The debtors have made payments to the Bank of Bentonville pursuant to the note and mortgage evidencing the transaction. The payments are amortized over 180 equal monthly installments beginning May 7, 1983. Interest on the principal balance accrues at eight percent per annum.

## Position of Parties

The Bank of Bentonville contends that the debtors' proposed plan should not be confirmed because although the debtors may modify the rights of holders of secured claims whose claims are not secured only by a security interest in real property which is the debtors' principal residence under 11 U.S.C. § 1322(b)(2), the debtors have not proposed that the Bank retain the lien securing the Bank's claim as required under 11 U.S.C. § 1325(a)(5)(B)(i).

The debtors contend their proposed plan should be confirmed, because the proposed sale of five acres of the debtors' homestead on which the Bank of Bentonville holds a second lien is a permissible modification of the Bank's rights under 11 U.S.C. § 1322(b)(2).

## Conclusions of Law

11 U.S.C. § 1322(b)(2) provides:

Subject to subsections (a) and (c) of this section, the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

■ The secured claim of the Bank of Bentonville is secured not only by the debtor's homestead property but also by commercial property. Therefore, under § 1322(b)(2), it is permissible to modify the rights of the Bank of Bentonville. *See In re Foster*, 61 B.R. 492 (Bkrtcy.N.D.Ind. 1986); *In re DeMoss*, 59 B.R. 90 (Bkrtcy.W. D.La.1986); and *In re Hildebran*, 54 B.R. 585 (Bkrtcy.D.Ore.1985). *See also 5 Collier on Bankruptcy*, ¶ 1322.06[1] (15th ed. 1986).

Modification of a secured creditor's rights under § 1322(b)(2) is not without limitation, however. The extent to which a chapter 13 plan may modify the rights of a holder of a secured claim is subject to the confirmation standards set forth in 11 U.S. C. § 1325(a)(5). *5 Collier on Bankruptcy*, ¶ 1302.06[1] (15th ed. 1986) and ¶ 1325.06[2] (15th ed. 1985).

■ Under § 1325(a)(5), the Court may confirm a plan if:

[W]ith respect to each allowed secured claim provided for by the plan—

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that *the holder of such claim retain the lien securing such claim;* and

        (ii) the value, as of the effective date of the plan of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

    (C) the debtor surrenders the property of such claim to the holder.

(Emphasis added). The legislative history notes that the language of § 1325(a)(5)(B) was designed to protect secured creditors. Unless a secured creditor accepts a chapter 13 plan, the plan must provide that the secured creditor retain the lien securing the creditor's allowed secured claim in addition to receiving value, as of the effective date of the plan, to be distributed under the plan not less than the allowed amount of the claim. (124 Cong.Rec. H11,107 (daily ed. Sept. 28, 1978)). The practical effect of the lien retention provision of § 1325(a)(5)(B)(i) insures that a secured creditor's lien may not be directly affected without the secured creditor's consent and protects a secured creditor from any losses which may occur by a debtor's failure to complete the proposed plan. 5 *Collier on Bankruptcy* ¶ 1325.06[4][a] (15th ed. 1985). Even a lien on substitute or replacement collateral will not meet § 1325(a)(5) confirmation standards. *Id.*

At least one bankruptcy court has addressed the issue raised by the Bank of Bentonville. Confirmation of a plan proposed by debtors in *In re Litton,* 36 B.R. 660 (Bkrtcy.M.D.Tenn.1984), was denied because the debtors' plan did not provide that the bank would retain its lien securing its claim.

■ In the present case, the debtors' propose to modify the Bank of Bentonville's rights by selling property in which the Bank of Bentonville (as well as the Federal Land Bank) has a security interest. The Bank of Bentonville has not accepted this proposal pursuant to § 1325(a)(5)(A)

nor have the debtors proposed to surrender the property in which the Bank of Bentonville has a lien to satisfy the Bank's claim pursuant to § 1325(a)(5)(C); therefore, the provisions of § 1325(a)(5)(B) must be examined to determine whether the plan may be confirmed. Under their plan, the debtors do not propose that the Bank of Bentonville retain the lien securing their indebtedness. The provisions of § 1325(a)(5)(B)(i) are clear—a secured creditor must retain the lien securing its claim in order for a plan to be confirmed, even if the debtors propose to continue payments as required in the notes and mortgage evidencing the indebtedness. Therefore, even if § 1322(b)(2) allows a modification of the Bank's rights, the modification is not acceptable under § 1325(a)(5)(B)(i). Based on the provisions of § 1325(a)(5), the debtors' plan can not be confirmed as proposed in that the Bank of Bentonville will not retain the lien securing its claim.

The Bank of Bentonville's Objection to Confirmation is sustained. An Order of even date consistent with this Memorandum Opinion will be entered allowing the debtors 20 days in which to modify their plan.

IT IS SO ORDERED.