### In re Dharan MANDRAYAR and Linda Mandrayar, Debtors.

#### Bankruptcy No. 94–05270–A13.

United States Bankruptcy Court,
S.D. California.

Nov. 22, 1994.

---

John C. Colwell, San Diego, CA, for debtors.

David Skelton, Trustee, San Diego, CA.

Randall P. Mroczynski, Tustin, CA, for Chrysler Creditor Corp.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

Chrysler Creditor Corporation ("Chrysler") objects to the confirmation of debtors' Chapter 13 reorganization plan and requests an order from this Court dismissing the Chapter 13 case, or alternatively, modifying the reorganization plan.

This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 312–D of the United States District Court for the Southern District of California.

### FACTUAL SUMMARY

On May 13, 1994, debtors, Dharan and Linda Mandrayar, filed a voluntary Chapter 13 petition. At the time they filed their petition, they were both self-employed as film producers, with a combined monthly income of $4,071.62.[1] Along with their petition, the debtors filed a Chapter 13 plan. Under the terms of this plan, the debtors proposed to pay all unsecured creditors 10% of their allowed claims. They proposed to pay all secured creditors 100% of their allowed claims, plus 10% interest. In addition, the plan contained the following provision:

> 5. Lien Avoidance. Debtor(s) hereby elect to avoid the fixing of liens pursuant to section 522(f) of the Bankruptcy Code. All secured creditors, except those whose liens are avoidable pursuant to 522(f), shall retain their liens until paid as provided for by this Plan.

---

1. At the time, the debtors' monthly income consisted of $4,015.52 from their business and $56.12 from an annuity. The $4,015.52 represents the debtors' average monthly business income. Their actual monthly income during the

. Chrysler, an undersecured creditor[2], objects to the confirmation of debtors' plan, claiming: (1) the plan is not feasible because the debtors do not have sufficient regular income; and (2) the plan does not adequately protect Chrysler because it does not provide that Chrysler retain its lien in its collateral until the plan is completed.

## ISSUES PRESENTED

Chrysler's objection to confirmation places two issues before this Court:

1. Whether the debtors have sufficient regular monthly income to make their Chapter 13 plan feasible; and

2. Whether the debtors may, prior to the completion of their plan, invalidate Chrysler's lien on the unsecured portion of its undersecured claim after the secured portion has been paid in full.

## DISCUSSION

■ The first issue is straightforward and can be resolved summarily. Approximately one and a half months before the hearing on Chrysler's objections, Mr. Mandrayar obtained regular employment as an engineer. The income from his employment was not reflected in the original schedules filed with the debtors' petition. At the Court's request and subsequent to the hearing on this matter, the debtors filed amended schedules reflecting the income from Mr. Mandrayar's employment as well as modest proceeds from their business.[3] Based on the information contained in these amended schedules, the Court finds the debtors have sufficient regular income to make their Chapter 13 plan

feasible and overrules Chrysler's objection on this issue.

■ The second issue is more difficult to resolve and the Court begins its analysis by considering the parties' arguments. Chrysler argues that the plan fails to adequately protect its claims against the debtors because the lien avoidance provision: (1) permits the debtors to finance the redemption of the collateral; and (2) encourages the debtors to convert their case to Chapter 7 after the secured claim is paid and receive a discharge of Chrysler's unsecured claim.

Conversely, the debtors contend: (1) their plan complies with the "cram down" provisions in Bankruptcy Code section 1325(a);[4] and (2) Chrysler's concerns were considered and rejected in *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992).

*Murry–Hudson* involved a factual situation substantially similar to the one presented in this case. *Id.* at 960–61. In that case, the Bankruptcy Court held that the creditor was required to turn over title to the collateral after the secured portion of its claim had been paid in full under the plan. *Id.* at 964. The court based its decision on a debtor's power to modify the rights of secured creditors under section 1322(b)(2). Specifically, the court reasoned:

a Chapter 13 debtor is permitted not merely to alter the amount and terms of payment of her secured debts, but to hold the property free and clear of liens after paying the allowed secured claims in accordance with the provisions of her confirmed plan.

*Id.* at 962.

The court also concluded that the creditor's concerns about debtor misconduct were

---

six months preceding the filing of their petition varied from −$218.83 to $9,337.96.

2. Debtors purchased a 1992 Dodge Grand Caravan from Chrysler. As of July 15, 1994, the debtors owed $17,070.28 on the vehicle. Pursuant to section 506(a), Chrysler's claim was bifurcated into a secured claim of $14,975 and an unsecured claim of $2,095.28.

3. The amended schedules indicate the debtors' total projected monthly income is $4,108.46. Their total projected monthly expenses are $3,368.00. Their excess monthly income is $740.46, from which they propose to make bi-

weekly payments of $341.75 to the Chapter 13 trustee.

4. Section 1325(a) states in pertinent part:

Except as provided in subsection (b), the court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by plan—
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim....

largely illusory because: (1) a Chapter 13 plan must be proposed in good faith to be confirmed; (2) an undersecured creditor would be no worse off if a debtor dismissed or converted her case after paying the secured portion of the creditor's claim because the creditor would have received the approximate value of the collateral; and (3) a Chapter 13 debtor is unlikely to deprive herself of the "super discharge" at a time when her plan would be well on its way to or nearing completion. *Id.* at 962–63.

This Court agrees with the reasoning of the *Murry–Hudson* court and finds that Chrysler's concerns are also largely illusory. With respect to Chrysler's first argument that the debtors are financing a redemption of their collateral, Congress has specifically sanctioned the use of deferred payments to satisfy liens in Chapter 13. This process has been suggested as an appropriate solution for the debtor who cannot redeem encumbered property by a lump sum payment. *See Matter of Bunn,* 128 B.R. 281, 284 (Bankr.D.Idaho 1991).

With regard to Chrysler's second argument that to allow avoidance of Chrysler's unsecured lien encourages conversion to Chapter 7, it is highly doubtful that the debtors in this case will convert their case once Chrysler's secured claim is paid. First, the secured portion of Chrysler's claim ($14,975) is more than seven times the amount of the unsecured portion ($2,095.28). The size of the secured claim alone suggests that the debtors will not be in a position to convert their case any time soon. Second, the debtors' plan provides that unsecured creditors will only receive 10% of their allowed claims. It is extremely unlikely the debtors will forego the "super discharge" provisions and other benefits of a fully completed Chapter 13 plan merely to discharge the 10% of Chrysler's unsecured claim or $210.

While this Court finds the reasoning of the *Murry–Hudson* court persuasive, the debtor in that case utilized section 506(d) to avoid the creditor's lien. In this case, the debtors seek to utilize the cram down provisions of section 1325(a) to avoid Chrysler's lien. Consequently, this Court does not rely exclusively on *Murry–Hudson* to reach its decision. In addition, the Court holds that the cram down provisions of section 1325(a) compel confirmation of the debtors' plan.

■ According to section 1325(a)(5)(B), the court shall confirm a plan over a secured creditor's objection if: (1) the value, as of the effective date of the plan, of property to be distributed to secured creditors under the plan is not less than the allowed amount of their secured claims; and (2) the plan provides that the secured creditors retain their liens until their allowed secured claims are paid. If this two-part test is met, confirmation of the plan is mandatory. *Benevides v. Alexander (In re Alexander),* 670 F.2d 885, 888 (9th Cir.1982). *See also In re Tumbleston,* 28 B.R. 663, 664 (D.Colo.1983); *In re Polak,* 9 B.R. 502, 506 (W.D.Mich.1981); *In re Rushton,* 58 B.R. 36, 37 (Bankr.M.D.Ala. 1986); *In re Scott,* 7 B.R. 692, 694 (Bankr. E.D.Pa.1980); *In re Bonder,* 3 B.R. 623, 626 (Bankr.E.D.N.Y.1980); and *In re Keckler,* 3 B.R. 155, 157 (Bankr.N.D.Ohio 1980).

Chrysler contends without authority that the provisions of the Bankruptcy Code require that it retain its lien in the collateral until the plan is consummated. However, section 1322(b),[5] which permits debtors to modify the rights of secured creditors, coupled with section 1325(a)(5)(B), seem clearly to condone the debtors' lien avoidance provision. The legislative history of section 1325 further supports this view:

> [T]he secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. To the extent

---

5. Section 1322(b) states in pertinent part:
Subject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of

unsecured claims, or leave unaffected the rights of holders of any class of claims;
(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity. . . .

the deferred payments exceed the value of the allowed amount of the secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payments. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secured deferred payments to the extent of the amount of the allowed secured claim.

124 Cong.Rec. H11,107 (1978).

[redacted] Chrysler further contends that the lien avoidance provision renders section 349(b)(1)(C)[6] a nullity. In support of this last argument, Chrysler cites *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993).[7] Of course, a basic tenet of statutory interpretation requires this Court to read statutory provisions harmoniously whenever feasible. *Earle v. Carlson,* 188 U.S. 42, 47, 23 S.Ct. 254, 256, 47 L.Ed. 373 (1903). However, this Court finds no conflict between lien avoidance under section 1325(a) and lien reinstatement under section 349(b), since section 349(b) is explicitly not applicable to liens avoided under 1325(a). In fact, section 349(b) is only applicable to liens avoided under 506(d).

Since the debtors' plan provides that Chrysler will receive the full amount of its allowed secured claim plus 10% interest, this Court finds that the first part of the test for cram down under section 1325(a) has been met. In addition, since the plan provides Chrysler will retain its lien in the collateral until its secured claim is paid, this Court finds the second part of the test for cram down has also been met. Accordingly, this Court overrules Chrysler's objection on this issue and confirms the debtors' reorganization plan.

This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for debtors is directed to prepare an order in accordance with this Memorandum Decision within 10 days from its entry.

[redacted]

6. Section 349(b) states in pertinent part:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title;
> (1) reinstates—
> (C) any lien voided under section 506(d) of this title....

7. The *Jones* case involved a Chapter 13 debtor's attempt to strip down two undersecured liens on the debtor's residence. The court held that section 1322(b) did not prevent the debtor from stripping down the liens under section 506(d), but concluded that lien avoidance was inappropriate until after the reorganization plan was completed. *Id.* at 180.

In light of the Supreme Court's recent opinion in *Nobelman v. American Savings Bank,* ––– U.S. –––, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the *Jones* case is of dubious precedential value. In any event, since the debtors in *Jones* relied on section 506(d) to avoid their liens rather than section 1325(a), as the debtors in this case do, the *Jones* case is inapposite.