**In re Kelvin Ray MOORE, Glenda Jean Moore, Debtors.**

**No. 01–22864 SBB.**

United States Bankruptcy Court, D. Colorado.

March 28, 2002.

Sharon W. Grossenbach, Taya Powers, Michael J. Vos, Law Office of Sharon W. Grossenbach, Denver, CO, for debtors.

Robert M. Duitch, Robert M. Duitch, P.C., Colorado Springs, CO, for Ford Motor Credit Company.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtors' Motion to Confirm Amended Chapter 13 Plan and the Objection to Confirmation of Amended Plan filed by Ford Motor Credit Company ("FMCC"). At the February 20, 2002, confirmation hearing the Court ordered the parties to file briefs on the issue of release of the creditor's lien prior to discharge on or before March 8, 2002, at which time matter would be taken under advisement. Having reviewed the evidence submitted, the briefs, the file in this matter and the relevant case law, the Court is now prepared to rule.

### Issue and Conclusion

Section V, paragraph 6 of the Debtors' Amended Plan provides, in relevant part: "Upon being paid the secured portion of its claim, Ford Motor Credit shall release its lien and forward the title to the Debtor(s)." The practice proposed by this provision of the Plan is commonly referred to as "lien-stripping". The issue before this Court is whether a Chapter 13 plan *providing for the release of an under-secured creditor's lien upon full payment of the creditor's allowed secured claim prior to completion of the Chapter 13 plan and receipt of a discharge* may be confirmed over the creditor's objection.

There is a split of authority regarding whether "lien-stripping" which requires the release of the lien *prior* to completion of the plan—as proposed by the Debtors' Amended Plan in this instance—is proper in a Chapter 13 case. The propriety of requiring release of liens prior to plan completion has not been specifically addressed in the Tenth Circuit. For the reasons set forth below, this Court concludes that a Chapter 13 plan requiring the release of an under-secured creditor's lien prior to completion of the plan and receipt of a discharge is not permissible. Therefore, FMCC's Objection to Confirmation of Amended Plan is GRANTED,

and the Debtors' Motion to Confirm Amended Chapter 13 Plan is DENIED.

### Facts

FMCC is the holder of a lien on Debtors' 1999 Ford Explorer (the "collateral"). The Debtors value the collateral at $16,137.00. On September 20, 2001, FMCC filed a proof of claim in the amount of $34,179.36. FMCC filed an amended proof of claim on February 20, 2002, in the amount of $29,771.27. No objection to FMCC's initial or amended claim has been filed. The Amended Chapter 13 Plan, dated October 23, 2001 (hereinafter the "Plan"), provides that FMCC will retain its lien on the collateral and proposes to pay the secured portion of the claim ($16,137.00) capitalized at 11.9%, for total payments of $18,127.00. As an under-secured creditor, the unsecured portion of FMCC's claim ($13,634.27) will receive a pro-rata share of $11,732.82 to be paid to unsecured creditors (plus any surplus amounts remaining after payment of the priority and secured claims). Payments under the Plan are to be made from future earnings, with Debtors paying $900.00 per month for months 1–22 and $1,075.00 per month for months 23–36.

### Analysis and Order

▪ There is a split of authority on the issue of whether it is permissible for a Chapter 13 plan to require release of an under-secured creditor's lien upon payment of the secured portion of the claim, but prior to the completion of all payments under the plan and entry of an order discharging the debtor. "Lien-stripping" has been held to be impermissible in a Chapter 7 case by the Supreme Court. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). There is no clear direction in Chapter 13 cases, however.

Under 11 U.S.C. § 506(a), an under-secured creditor's claim is split (bifurcated) into two claims: (a) a secured claim equal to the value of the collateral; and (b) an unsecured claim equal to the amount by which the allowed claim exceeds the value of the collateral. Section 506(d) provides, in relevant part: "To the extent that a lien secures a claim against the debtor that is not an *allowed secured claim*, such lien is void." (Emphasis added.) The Supreme Court in *Dewsnup* held that while "allowed secured claim" under section 506(a) means only the amount of the claim equal to the value of the collateral, the same term in section 506(d) means the *entire* amount of the allowed claim under section 502, both the secured and unsecured portions. 502 U.S. at 417, 112 S.Ct. 773.

Section 1325(a)(5)(B) provides for confirmation a plan over the objection of the holder of a secured claim, if:

(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less that the allowed amount of such claim....

It is clear from this provision that an objecting secured creditor must retain its lien. Section 1325(a)(5)(B) is silent, however, on the issue of whether a debtor can require a creditor to release its lien against collateral once the secured portion of its claim has been paid, but prior to the completion of the Chapter 13 plan, as is proposed in this case.

Cases which allow lien-stripping coupled with *early release* of the lien in Chapter 13 plans rely primarily on two things: (1) section 1322(b)(2), which allows a plan to "modify the rights of holders of secured claims ..."; and (2) a statement that the goal of section 1325(a)(5) is to place creditors in the same position in which they would have been had they repossessed and

sold their collateral at the time of the bankruptcy filing. *See, e.g., In re Townsend,* 256 B.R. 881 (Bankr.N.D.Ill.2001); *In re Nicewonger,* 192 B.R. 886 (Bankr. N.D.Ohio 1996); *In re Peterson,* 163 B.R. 581 (Bankr.D.Idaho 1993); *In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Ca. 1992). The courts in these cases take the position that any concern about the debtor dismissing his case after the lien is released, but prior to completion of the plan, is outweighed by the policy of allowing a debtor a fresh start. In these cases, sections 1322 and 1325(a)(5) are viewed in isolation, apart from the rest of the provisions of Chapter 13 and the Bankruptcy Code, and ignore the reality that, in the absence of a Chapter 13 plan, a debtor would be faced with only two choices: (1) loss of the vehicle; or (2) full payment of the debt, either through reaffirmation in bankruptcy or payment outside of bankruptcy.

A second line of cases holds that debtors cannot obtain confirmation of a plan that would allow them to demand release of a secured creditor's lien prior to the completion of all payments under their plan and entry of a discharge. *See, e.g., In re Thompson,* 224 B.R. 360 (Bankr.N.D.Tex. 1998); *Matter of Pruitt,* 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich. 1993); *see also In re Zakowski,* 213 B.R. 1003 (Bankr.E.D.Wis.1997). This line of cases looks beyond 11 U.S.C. §§ 1322 and 1325, examining the effect of other provisions of the Bankruptcy Code, as well as the lack of specific language allowing for early release of liens under a Chapter 13 plan. *See, e.g., Pruitt,* 203 B.R. at 137 (the court noted that had Congress intended for a lien to be released upon payment of the secured portion of a claim, it would have drafted section 1325(a)(5)(B)(i) to require that a plan provide the secured cred-

itor retain its lien *"until the creditor receives full payment of the allowed secured claim."*).

■ This Court finds the reasoning of this second line of cases to be persuasive. As these cases point out, section 1307(b) gives the Debtors an absolute right to dismiss their case *ex parte* at any time without a showing of cause. After such dismissal, 11 U.S.C. § 349(b) reinstates "any lien avoided under section 506(d) of this title...." If a provision such as that proposed by the Debtors here is allowed, however, and the Debtors dismiss their case after FMCC's lien has been released and the title returned to Debtors, section 349(b) will effectively be rendered moot. Reinstatement of FMCC's lien will not be possible, as such lien will not have been "avoided under section 506(d)". FMCC's lien will have been "released" and the title to the vehicle returned to the Debtors, who could possibly sell or use the vehicle as collateral for another loan in the interim. Under Colorado law, a security interest in a motor vehicle is *only* effective as a valid lien if it is recorded and is noted on the certificate of title, C.R.S. § 42–6–120(1), which will not be possible because the certificate of title will no longer be in FMCC's possession. It will have been returned to the Debtors ... stripped of the encumbrance. There is, therefore, no practical and certain way to return to the pre-filing status quo as contemplated by section 349. Accordingly, this Court finds that, in order to obtain the benefit of the modification of a secured creditor's rights and release of a lien without full payment of the debt, the Debtors must complete all of the payments under their Chapter 13 plan and be granted a discharge.

*In re Talbot,* 124 F.3d 1201 (10th Cir. 1997), cited by the Debtors in support of their argument that Section V(6) of their

proposed Plan is proper, does not require a different result. The issue in *Talbot* was the IRS' ability to demand payment for release of its lien on the debtor's real property *in excess* of the amount provided by the confirmed Chapter 13 plan. In fact, the Tenth Circuit Court of Appeals specifically stated: "This court need not address the difficult issues surrounding lien-stripping in Chapter 13 because the United States failed to object to the treatment of its claim and the strip-down of its lien prior to the confirmation of the Plan." 124 F.3d at 1209 n. 10.

### Order

IT IS THEREFORE ORDERED that:

1. FMCC's Objection to Confirmation of Amended Plan shall be and is hereby GRANTED.

2. Debtors' Motion to Confirm Amended Chapter 13 Plan shall be and is hereby DENIED.

IT IS FURTHER ORDERED that the Clerk shall mail a copy of this Order to all interested parties.