**In re Manuel H. CASTRO and Ernestine C. Castro, Debtors.**

**No. 01–17122–PHX–RJH.**

United States Bankruptcy Court, D. Arizona.

Nov. 14, 2002.

Ronald J. Ellett, Phoenix, AZ, for Debtors.

Steven M. Cox, Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C., Tucson, AZ, for General Motors Acceptance Corp.

Edward J. Maney, Phoenix, AZ, Chapter 13 Trustee.

## OPINION AND ORDER RE CHAPTER 13 PLAN PROVISION FOR RELEASE OF LIEN

RANDOLPH J. HAINES, Bankruptcy Judge.

The Chapter 13 plan filed by Manuel and Maria Castro ("Debtors") provides that upon completion of all payments to be applied to the "stripped down" lien [1] held by General Motors Acceptance Corp. ("GMAC") on the Debtors' 1999 Chevrolet Lumina, the lien shall be released, even if this occurs prior to completion of all plan payments and the granting of the Debtors' discharge.[2] GMAC objects. Although the final car payment will be made as part of the last plan payment if all payments are made as scheduled by the plan,[3] GMAC nonetheless maintains the lien release language of the plan is objectionable because it would permit the Debtors, for example, to trade in the car and pay off the reduced lien early.

---

1. The debt exceeded $17,000 when this case was filed in January, 2002, and in July the parties agreed the value of the collateral for plan purposes was a mid-Blue Book value of $12,757.50.

2. The provision states in pertinent part: "Creditors shall retain their interest in property securing their claims. They shall be paid the lesser of the debt balance or the value of the property securing their claim, together with the interest at the rate specified. Upon payment of this amount their security interest shall be released." Chapter 13 Plan and Application for Payment of Administrative Expenses § IV ¶ 5.

3. It is customary for Chapter 13 trustees in this district, unless the Chapter 13 plan specifically requires otherwise (and few rarely do), to dispense plan proceeds first to allowed administrative claims (typically the debtor's attorney's fees), then to cure any arrearage on house payments, then to satisfy debts secured by a car, and finally to unsecured creditors. Consequently in many plans, particularly those that provide a relatively larger percentage payment on unsecured debts, the car debt may be paid off long before the last payment on the plan, but the auto lender must await any payments until the administrative claims and home mortgage arrearages are paid in full.

GMAC, and the cases it cites, make four arguments that release of a lien prior to completion of the Chapter 13 plan is inappropriate. First, some of GMAC's authorities [4] hold that early release of the lien would violate § 1325(a)(5).[5] Second, GMAC argues release of its lien prior to all plan payments would effectively grant the Debtors a premature discharge in violation of §§ 1328(a) & (b). Third, GMAC argues that such a plan provision would permit the debtor to pay off the car lien and then convert to Chapter 7. But in Chapter 7, GMAC is protected against such lien stripping by the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and yet with its lien automatically released by the terms of the Chapter 13 plan, GMAC would not be able to restore itself to the position that *Dewsnup* guarantees it in a Chapter 7 case. GMAC argues this result would amount to a windfall for the Debtor and circumvent the holding of *Dewsnup*. Finally, it is argued that cancellation of the lien would violate § 349.

These arguments will be addressed in turn.

## Release of Satisfied Liens Complies With § 1325(a)(5).

■ GMAC references a string of cases [6] to support its argument that it is improper to release a creditor's secured lien prior to discharge in Chapter 13. Specifically, GMAC relies on *In re Hink*, 81 B.R. 489, 490–91 (Bankr.W.D.Ark.1987), for the proposition that the requirements of section 1325(a)(5) are not met if a secured lien is released prior to discharge, and that § 1325 serves as a limitation on § 1322's authority for plans to modify liens.

Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims." In this case, the modification consists of the reduction of the amount of the secured debt from the allowed amount of GMAC's claim to the value of the collateral as determined according to § 506(a). This section "provides the authorization necessary for chapter 13 plans to release liens upon full payment of the secured portion of a debt." *In re Shorter*, 237 B.R. 443, 445 (Bankr. N.D.Ill.1999). Nothing in § 1325 requires that the lienholder retain its lien after the secured debt has been fully satisfied.[7]

---

4. For example, *In re Hink*, 81 B.R. 489 (Bankr.W.D.Ark.1987), held that § 1325(a)(5) would be violated by a plan in which the debtors would sell a portion of their homestead property and use the proceeds to pay taxes, while continuing payments to the mortgage holder on that property. That holding has no bearing here, where the plan does not propose to release some of GMAC's collateral before its allowed secured claim is fully paid, but the case is cited for the more general proposition that § 1325(a)(5)(B)(i) trumps § 1322(b)(2).

5. Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Section 1325(a)(5) requires that "with respect to each allowed secured claim provided for by the plan—(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii)

the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ."

6. *In re Scheierl*, 176 B.R. 498 (Bankr.D.Minn. 1995); *In re Wilson*, 174 B.R. 215 (Bankr. S.D.Miss.1994); *In re Hink*, 81 B.R. 489 (Bankr.W.D.Ark.1987); *In re Shaffer*, 48 B.R. 952 (Bankr.N.D.Ohio 1985). In addition to these cases, there are others to the same effect. *E.g., In re Moore*, 275 B.R. 390 (Bankr. D.Colo.2002); *In re Thompson*, 224 B.R. 360 (Bankr.N.D.Tex.1998); *In re Pruitt*, 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Jones*, 152 B.R. 155 (Bankr.E.D.Mich.1993); *In re Zakowski*, 213 B.R. 1003 (Bankr.E.D.Wis.1997).

7. *Shorter*, 237 B.R. at 446. "The Vehicle title should not be properly held 'hostage' to secure the creditor's remaining unsecured

Indeed, to the contrary, § 1325 specifically requires the lienholder only to "retain the lien securing *such claim,*" and the reference of "such claim" is to the "allowed secured claim" identified in the opening phrase of § 1325(a)(5). The term of art "allowed secured claim" is defined by § 506(a) and is thereby limited "to the extent of the value of such creditor's interest in the estate's interest" in the collateral securing the claim.[8] Nothing in the language of § 1325(a)(5) requires the lienholder to retain a lien securing the entire allowed claim, which is what GMAC's reading would require. The "plain meaning" of § 1325(a)(5) thus compels rejection of GMAC's argument.

### Release of a Satisfied Lien Is Not a Discharge

■ The second argument is that release of the lien prior to completion of all plan payments would constitution a premature discharge in violation of § 1328. Section 1328 provides in pertinent part that *"after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan ..."* (emphasis added).

The plan provision to which GMAC objects, however, does not purport to grant the Debtor a discharge, even upon full payment of GMAC's allowed secured claim. Rather, it merely provides that GMAC's lien shall then be released. The Debtors remain liable for the full remaining balance of GMAC's allowed claim, as an unsecured claim determined pursuant

to § 506(a), until completion of all plan payments. Consequently no premature discharge is sought or provided for by the plan provision in question. Because there is no early discharge provided by the Debtor's plan, it does not violate § 1328.

### *Dewsnup's* Anti–Lien–Stripping Holding Does Not Apply to Personal Property or to Chapter 13 Cases.

■ GMAC and the conflicting case law on this point raise essentially two distinct arguments based on *Dewsnup*. One argument hypothesizes a conversion to Chapter 7 immediately following the Debtor's last payment on the reduced car lien, and maintains that would constitute a Chapter 7 lien stripping that is prohibited by *Dewsnup*. The other argument does not hypothesize a conversion to Chapter 7, but instead maintains that § 1325(a)(5) requires retention of the lien securing the "allowed secured claim," and that *Dewsnup* interprets that phrase to mean the full allowed claim, both secured and unsecured.

Before addressing the details of these arguments, it is useful to recall exactly what *Dewsnup* held, and what it expressly declined to hold. *Dewsnup* was a Chapter 7 case in which a debt of $119,000 was secured by a deed of trust on two parcels of Utah farmland. The debtor filed an adversary proceeding, pursuant to § 506, seeking to "avoid" the portion of the lien exceeding the fair market value of the property, which after trial the court found to be $39,000.[9]

The Supreme Court held that "given the ambiguity in the text [of §§ 506(a) and

---

claim after bifurcation under § 506(a) has occurred and the secured portion of the claim has been paid in full." *In re Johnson,* 213 B.R. 552, 556 (Bankr.N.D.Ill.1997).

**8.** *In re Weinstein,* 227 B.R. 284, 291 n. 7 (9th Cir. BAP 1998). Obviously this begs the question of whether the appropriate definition of "allowed secured claim" is that found in

§ 506(a) or what *Dewsnup* found in § 506(d) in the context of claims secured by real property in Chapter 7 cases. That discussion will be deferred until consideration of the argument based on *Dewsnup*.

**9.** 502 U.S. at 413, 112 S.Ct. 773.

(d) ], we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." [10] As is often noted, it limited its holding to the facts before it: "Accordingly, we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." [11] While that footnote alone suggests *Dewsnup's* analysis may be inapplicable to a Chapter 13 case such as this, that inapplicability is more solidly demonstrated by the basis for the Court's reasoning.

The Court noted that "[w]ere we writing on a clean slate, we might be inclined to agree with petitioner that the words 'allowed secured claim' must take the same meaning in § 506(d) as in § 506(a)." [12] All that kept the Court from that logical conclusion was contrary results reached under the repealed Bankruptcy Act. The opinion referenced Act § 67d, applicable in a "straight bankruptcy," or today's equivalent of a Chapter 7.[13] All of the cases it cited in support of its conclusion that liens could not be stripped down under the Act were decided before the reorganization provisions were added by the Chandler Act in 1938.[14]

Most significantly, the Court specifically noted that the result was otherwise in "reorganization proceedings" under the Act,[15] referencing the Chapter X provisions, Act §§ 216(1) & (10), which provide that a plan of reorganization may include provisions "altering or modifying" secured creditors' rights or for the "satisfaction or modification of liens." Under those provisions, courts, including the Supreme Court, had upheld the stripping of liens to the appraised value of the collateral.[16] And although not specifically referenced by the Court in *Dewsnup*, Chapter XII also contained an identical provision, in Act §§ 461(12) (a Chapter XII arrangement may provide for "the satisfaction or modification of liens").[17] Chapter XIII permit-

---

**10.** *Id.* at 417, 112 S.Ct. 773.

**11.** *Id.,* n. 3, 112 S.Ct. 773.

**12.** *Id.* at 417, 112 S.Ct. 773.

**13.** *Id.* at 418 n. 4, 112 S.Ct. 773.

**14.** *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); *City of Richmond v. Bird,* 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543 (1919); *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), cited in *Dewsnup,* 502 U.S. at 418–19 & n. 4, 112 S.Ct. 773.

**15.** *Dewsnup,* 502 U.S. at 418, 112 S.Ct. 773.

**16.** *E.g., Wright v. Union Cent. Life Ins. Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); *In re Witherbee Court Corp.,* 88 F.2d 251 (2d Cir.), *cert. denied,* 301 U.S. 701, 57 S.Ct. 931, 81 L.Ed. 1356 (1937). Such treatment was also permissible in a Chapter IX municipal reorganization, and in such a case Justice Douglas noted it was permissible un-der Chapter X and "is indeed the historic method of dealing with dissenters under plans of reorganization." *Mason v. Paradise Irr. Dist.,* 326 U.S. 536, 546, 66 S.Ct. 290, 90 L.Ed. 287 (1946).

**17.** Just prior to the adoption of the Code, Congress became acutely aware that this Chapter XII provision could permit a "strip down" of liens and confirmation of the plan over the objection of all (usually only one) secured creditors so affected, by the decisions in *In re Hobson Pike Assocs., Ltd.,* 3 B.C.D. 1205, 1977 WL 182364 (Bankr.N.D.Ga.1977) and *Massachusetts Mut. Life Ins. v. Marietta Cobb Apartments Co. (In re Marietta Cobb Apartments Co.),* 3 B.C.D. 720, 1977 WL 182365 (Bankr.S.D.N.Y.1977). It was in reaction to these cases that Congress apparently adopted § 1129(a)(10), requiring the assent of at least one impaired creditor class. *See In re Greystone III Joint Venture,* 102 B.R. 560, 565–66 (Bankr.W.D.Tex.1989), *rev'd* 995 F.2d 1274 (5th Cir.1991); *In re Polytherm Indus. Inc.,* 33 B.R. 823, 834 (W.D.Wis.1983); *In re Barrington Oaks Gen. Part'ship,* 15 B.R. 952, 969–70 (Bankr.D.Utah 1981). But it did not

ted plans to "include provisions dealing with secured debts severally, upon any terms," Act § 646, and the Chapter XIII rules bifurcated undersecured claims just as does § 506(a).[18]

The Ninth Circuit Bankruptcy Appellate Panel relied on this same analysis to conclude that *Dewsnup* does not prohibit lien stripping in Chapter 11 cases.[19]

Moreover, the legislative history of Chapter 13 is contrary to the legislative history of § 506 that the Court partially relied on for its *Dewsnup* conclusion.[20] The House report on § 1325 specifically stated: "the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a

present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full." [21]

■ Consequently the Court's conclusion in *Dewsnup* is inapplicable outside of Chapter 7 not only because the Court expressly declined to address fact scenarios not then before it, but more importantly because the sole *reason* for the Court's conclusion does not apply outside of Chapter 7—the repealed Bankruptcy Act did not prohibit lien stripping in Chapters IX, X, XI, XII and XIII. Because *Dewsnup* contains no other reason to read "allowed secured claim" in § 506(d) differently than in § 506(a), such a reading has no application outside of Chapter 7.[22] Indeed, to the

---

cause Congress to revise §§ 506(a) & (d), or §§ 1129(b)(2)(A)(i) or 1325(a)(5).

**18.** "If a secured creditor files a claim, the value of the security interest held by him as collateral for his claim shall be determined by the court. The claim shall be allowed as a secured claim to the extent of the value so determined and as an unsecured claim to the extent it is enforceable for any excess of the claim over such value." Rule 13–307(d). If the secured claim was "dealt with" by the plan, the plan could not be confirmed without the consent of the secured creditor, Act §§ 651 & 652, giving rise to the practice of treating nonconsenting secured creditors "outside the plan." *See, e.g., Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 485 (5th Cir.1982). But the rules were clear that "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject of plan in both capacities unless his secured claim is not dealt with by the plan, in which event he shall be entitled to accept or reject only as an unsecured creditor." Rule 13–202(c). Chapter XI similarly could not deal with secured claims, but could deal with the unsecured portion of undersecured claims. *See R.I.D.C. Indus. Dev. Fund v. Snyder,* 539 F.2d 487 (5th Cir.1976), cited with approval in *Pyramid Inv. Co. v. Palmquist,* 553 F.2d 1194 (9th Cir.1977).

**19.** *In re Weinstein,* 227 B.R. 284, 292 n. 8 (9th Cir. BAP 1998).

**20.** In *Dewsnup,* the Court quoted H.R.Rep. No. 95–595, p. 357 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6313: "Subsection (d) permits liens to pass through the bankruptcy case unaffected." 502 U.S. at 419, 112 S.Ct. 773.

**21.** 124 Con. Rec. H11,107 (1978), quoted in *In re Mandrayar,* 174 B.R. 289, 292 (Bankr. S.D.Cal.1994).

**22.** Indeed, even in a Chapter 7 case, *Dewsnup* is properly limited only to apply to real property liens, not to personal property liens. Introducing its analysis of the prior Act provisions, the Court noted that "Under the Bankruptcy Act of 1898, a lien on *real property* passed through bankruptcy unaffected." 502 U.S. at 418, 112 S.Ct. 773 (emphasis added). And the Court noted that the Tenth Circuit had concluded that if a similar conclusion were reached with respect to personal property that was property of the estate, such "result would be inconsistent with § 722 under which a debtor has a limited right to redeem certain personal property." *Id.* at 414, 112 S.Ct. 773, citing *In re Dewsnup,* 908 F.2d 588, 592 (10th Cir.1990). Section 722 permits Chapter 7 debtors to redeem tangible personal property intended primarily for personal, family or household use from a lien securing a dischargeable consumer debt, if the property has been exempted or abandoned. To redeem, the debtor must pay the secured creditor "the amount of the allowed secured claim." Certainly no one could read

contrary, the Court noted that the terms should be read consistently "were we writing on a clean slate,"[23] but there is an even stronger reason to read them to permit lien stripping in reorganization cases—the very rationale of *Dewsnup* itself. Because lien stripping was permitted in Chapters IX, X, XI, XIII and XIII of the Act, the same conclusion should apply under the Code absent "some discussion in the legislative history" "to effect a major change in pre-Code practice."[24] Neither GMAC nor any of the case law it cites provides any such legislative history showing that the Code was intended to prohibit lien stripping in reorganization cases as it had been permitted under the Act.

This analysis disposes of both aspects of the arguments based on *Dewsnup*. It demonstrates that §§ 506(a) and (d) should be read consistently in cases under Chapter 13, which means that § 1325(a)(5)'s requirement for retention of the lien until payment of the allowed secured claim requires only the payment of the amount determined pursuant to § 506(a).[25] Nothing requires retention of the lien after the secured debt is satisfied. Even if there is a conversion to Chapter 7 after all required lien payments have been made, this result is not contrary to *Dewsnup* because the lien, as modified, has been fully satisfied in the Chapter 13 case, and therefore no lien remains to be "avoided" in the Chapter 7 case.

### Satisfaction of Stripped Lien Does Not Violate § 349, or Confer a Windfall

■ Finally, although GMAC does not argue the point, some authorities conclude that the Debtor's reading of §§ 1322 and 1325 would render § 349 ineffective.[26] Section 349 states in pertinent part that, "unless the court, for cause, orders otherwise, a dismissal of a [bankruptcy] case ... (1) reinstates ... (C) any lien voided under 506(d)..." 11 U.S.C. § 349(b)(1)(c). "In the event of ... a dismissal [or conversion to Chapter 7] 11 U.S.C. § 349(b) restores the full pre-petition *status quo* as to the debtor's property rights, and his creditor's competing claims against them." *In re Scheierl*, 176 B.R. at 504.

But § 349 only restores liens avoided under § 506(d). It therefore has no bearing where § 506(a) was used to bifurcate the claim, § 1322 was used to modify the lien to secured only the allowed secured

*Dewsnup* to mean that a Chapter 7 debtor could redeem his consumer collateral, such as the car in this case, by payment of the allowed secured claim as limited by the value of the collateral, and then take the car still subject to the lien. To avoid such an absurd result *Dewsnup* must be limited to real property collateral, which may have been the Court's purpose in noting that the contrary result under the Act, which drove its conclusion, was limited to real property liens.

**23.** 502 U.S. at 417, 112 S.Ct. 773.

**24.** 502 U.S. at 419, 112 S.Ct. 773.

**25.** *Accord, In re Townsend*, 256 B.R. 881 (Bankr.N.D.Ill.2001); *In re Shorter*, 237 B.R. 443 (Bankr.N.D.Ill.1999); *In re Johnson*, 213 B.R. 552, 557–58 (Bankr.N.D.Ill.1997) (the meaning of "such claim" in § 1325(a)(5)(B)(i)

and (ii) refers only to "the secured component of creditor's claim"); *In re Nicewonger*, 192 B.R. 886, 887–90 (Bankr.N.D.Ohio 1996); *In re Mandrayar*, 174 B.R. 289, 292–93 (Bankr. S.D.Cal.1994) (holding that a plan can provide for a release of a lien upon satisfaction of secured portion of undersecured claim); *In re Flowers*, 175 B.R. 698 (Bankr.N.D.Ill.1994), *aff'd sub nom Bank One, Chicago, N.A. v. Flowers*, 183 B.R. 509 (N.D.Ill.1995); *In re Jones*, 152 B.R. 155 (Bankr.E.D.Mich.1993), (holding that lien stripping is available in Chapter 13 cases).

**26.** *E.g., In re Moore*, 275 B.R. 390, 393 (Bankr.D.Colo.2002)("If a provision such as that proposed by the Debtors here is allowed, however, and the Debtors dismiss their case after FMCC's lien has been released and the title returned to Debtors, section 349(b) will effectively be rendered moot.").

claim as so determined, and the plan payments and § 1325(a) were then used to satisfy the modified lien, not to avoid it.[27]

■ The Court also rejects the implication in some of GMAC's authorities that a conversion or dismissal following satisfaction of the stripped lien will confer a windfall on the Debtors. If there is a dismissal or conversion to Chapter 7 prior to the completion of the plan by the Debtors, there is a loss of the *in personam* benefit of the discharge under § 1328. Consequently the Debtors will remain liable for the full balance of the debt to GMAC, *and* GMAC will have already received the present value of its collateral. That puts GMAC in the same economic position as if it repossessed and foreclosed on its collateral upon default. Indeed, GMAC would then be in a better position than if the Debtors had simply redeemed their car

pursuant to § 722. Section 722 permits debtors to redeem their personal property collateral simply upon payment of "the amount of the allowed secured claim," and no one could logically argue the creditor would still be entitled to retain a lien on the collateral following such redemption. The Chapter 13 plan is essentially a deferred redemption, with a requirement that the creditor be paid the present value of the redemption amount by virtue of § 1325(a)(5)(B)(ii).[28] There would be no windfall from a subsequent conversion, as the Debtor has already paid the value required by § 722, with interest. And, having paid that greater amount, debtors would have every reason to complete their plans and obtain a discharge, rather than again become liable for the full balance. "Debtors have a substantial economic in-

---

**27.** The *Moore* opinion recognized this: "Reinstatement of FMCC's lien [pursuant to § 349] will not be possible, as such lien will not have been 'avoided under section 506(d),'" but rather will have been satisfied and released. *Id.* That court found that result troubling because it would mean there is "no practical and certain way to return to the pre-filing status quo as contemplated by section 349." *Id.* This same concern was more expansively addressed in *In re Scheierl*, 176 B.R. 498 (Bankr.D.Minn.1995). But § 349 does not require a return to the pre-filing status quo in all circumstances. It does not, for example, require a return to the status quo if a debtor has redeemed property pursuant to § 722. And if it did, the lender would presumably be required to return all the payments it received, a result for which no one argues. When a lien has been fully satisfied, pursuant to the plan provision at issue here or pursuant to § 722, it is entirely proper that § 349 cannot restore the lien upon dismissal.

**28.** *Accord, In re Hargis*, 103 B.R. 912, 916 (Bankr.E.D.Tenn.1989). The Sixth Circuit decision in *In re Burba*, 1994 WL 709314, 1994 U.S.App. LEXIS 31290 (6th Cir.1994) seems to reject the argument that § 1325(a)(5)(B)(ii) is a deferred redemption, but there are several reasons not to follow its conclusion. First, the opinion was ordered

depublished, so it has no precedential value. 1994 WL 620949, 1994 U.S.App. LEXIS 36162. Second, the opinion did not contain any economic analysis establishing a financial difference between § 1325(a)(5)(B)(ii) and a § 722 redemption, if the interest rate is chosen appropriately to provide the requisite present value. In fact, the opinion recognized that its conclusion would mean that if the debtor sought to redeem the collateral post-conversion, the debtor "will have to pay the value of the collateral twice and the creditor will receive a windfall at the expense of unsecured creditors." Third, at the time of the conversion, the debtor had not in fact concluded making all payments on the secured debt as required by the Chapter 13 plan. Finally, the issue arose not at confirmation, as here, but after conversion. The bank argued that it had relied on the distribution on the unsecured claim when it accepted the value placed on the collateral in the Chapter 13 plan, suggesting it might have insisted on a higher value for the secured claim if it had known that its lien would be deemed satisfied when that amount is paid. That issue does not arise when the lien satisfaction argument is made at the time of confirmation rather than after conversion.

centive to keep the plan going to full consummation and obtain a discharge under § 1328(a) for all allowed unsecured claims...." *In re Johnson,* 213 B.R. at 557.

To the contrary, for GMAC to receive the full value of its collateral and still retain a lien to secure the unsecured portion of its debt would be to give GMAC a windfall compared to other unsecured debts. It would give GMAC's unsecured claim preferential treatment that is not enjoyed by other unsecured claims, because GMAC's unsecured claim would remain secured by a contingent or springing lien, effective upon conversion. This is prohibited by § 1322(a)(3), which requires all claims in the same class to have the same "treatment." And it creates the anomaly that if the debtor paid the full secured claim through the Chapter 13 plan, then converted to Chapter 7 and sought to redeem the vehicle pursuant to § 722, the debtor would have to pay the value of the collateral *twice.*[29] This rather conclusively establishes whose argument creates a potential windfall.

As one court noted, this overrides any "concern about the potential of abuse which could occur if the Debtors paid off the secured portion of the claim and then failed to complete the plan ...." *In re Nicewonger,* 192 B.R. at 890.

> To graft into § 1325 the idea that § 349 might allow a holder of a secured claim to keep both a stream of payments received prior to dismissal of a case and the full economic value of the collateral that a chapter 13 debtor seeks to redeem through his or her plan would be

an inappropriate statutory expansion. While no provision of the Code dealing with chapter 13 plan formulation can be ignored in this analysis, a Code provision dealing with potential dismissal cannot act to circumvent the rights specifically granted to chapter 13 debtors.

*Id.* (citing *In re Murry–Hudson,* 147 B.R. 960, 962–964 (Bankr.N.D.Cal.1992) (stating that the creditor with a released lien is probably left in no worse condition than if the debtor had not filed bankruptcy, it having received the value of the collateral and creditor would retain its claim if such Chapter 13 were dismissed)).

In fact, Congress has already heard and responded to the complaint of secured creditors whose liens might be stripped in a Chapter 11 reorganization case, and its response indicates what the Code would provide if Congress had similarly intended to protect Chapter 13 secured creditors. As noted above, while the Code was pending adoption in Congress, two Chapter XII cases approved lien stripping in a context where the debtor intended an early "cash out" of the reduced lien.[30] This caused lenders to seek a remedy to prevent such a lien stripping, and Congress provided it in § 1111(b). That provision gives a secured lender the option of retaining its lien to the full amount of its debt, even though the collateral is worth less. The purpose is to protect the lender from an early default, or cash out, by the debtor prior to completion of the plan,[31] exactly the remedy GMAC seeks here. But the *quid pro quo* that Congress required for that additional protection was that the lender waive its unsecured claim and not participate in the plan

---

**29.** *See* note 28, *supra.*

**30.** *See* note 17, *supra.*

**31.** "The real benefit of the [§ 1111(b)] election is that it protects the creditor against a quick sale of its collateral.... Similarly, an

electing creditor benefits if there is an appreciation in the value of the collateral and the debtor defaults on its plan payments." *In re Weinstein,* 227 B.R. 284, 295 n. 12 (9th Cir. BAP 1998).

as an unsecured creditor, either for voting or distribution. Such a remedy has not been expressly made available in Chapter 13 cases, and yet the result GMAC argues for would be *better* than a § 1111(b) electing creditor can get in a Chapter 11 case, because GMAC retains its unsecured claim under the plan.[32] The absence of a § 1111(b) provision in Chapter 13 indicates Congress did not intend secured creditors to retain their liens to the full amount of the debt, following a modification of the lien to equal the value of the collateral and payment of the present value of such amount through a plan.

### Conclusion

Based on the foregoing analysis, GMAC's objection to confirmation of the Debtor's Chapter 13 plan is denied.

---

**32.** One bankruptcy court concluded that retention of the lien even after payment of the allowed secured claim pursuant to a chapter 13 plan would provide secured creditors " § 1111(b)(2) treatment," whereas "Congress obviously concluded that undersecured creditors in chapter 13 cases could not elect to have their liens extend beyond the value of their collateral." *In re Hargis*, 103 B.R. 912, 915 (Bankr.E.D.Tenn.1989).